O. J. CULLUMBER, Appellant, v. CHARLES J. WINTER, Appellee.

**Contracts for the sale of land:** BREACH: DAMAGES. Where the vendor of land has acted honestly and is prevented from completing his contract by causes which he can not control, the vendee is only entitled to nominal damages for his default; but where he was at fault, and either knew or should have known that he could not comply with his contract, the vendee should recover substantial damages, including compensation for all his actual loss. In this action the vendee knew at the time of the original contract that the vendor did not have title to the land, but thereafter a written modification of the contract was made and the vendor represented that he had acquired the title and was in position to perform, the vendee having no knowledge to the contrary. *Held,* that the vendee was entitled to damages regardless of the vendor's fraud or deceit, or whether he knew or should have known that he could not comply with his contract.

**Same:** DAMAGES: PLEADINGS. The averments of the petition in this case that the vendee in reliance upon the contract had expended money for the purchase of tile and machinery for the improvement and cultivation of the land; had contracted to lease part of it, and had secured a loan of money to pay the purchase price, while not as specific as they should have been, were, in the absence of a motion for more specific statement, sufficient to permit evidence of special damages.

*Appeal from Washington District Court*—HON. BYRON W. PRESTON, Judge.

THURSDAY, FEBRUARY 15, 1912.

ACTION at law to recover damages for breach of a contract to convey real estate. Trial to a jury, verdict and judgment for plaintiff for part of the amount claimed, and he appeals.—*Reversed.*

*Marsh W. Bailey* and *W. M. Keeley,* for appellant.

*C. A. Dewey* and *Eicher & Livingston,* for appellee.

DEEMER, J.—The petition is in three counts. In the first, plaintiff seeks to recover the general damages claimed to have been sustained by him, due to defendant's failure to comply with his contract to convey certain lands; in the second, he asks to recover certain special damages; and, in the third, he asks to recover the sum paid by him on the purchase price, with interest from September 15, 1909.

As one of the principal points in the case turns upon the sufficiency of the second count, we here set out the material portions thereof:

Par. 2. That, in reliance on said contract and modification, plaintiff, after the date thereof, expended a large sum of money in preparation for the use of said real estate for farming purposes, this being the use and purpose for which same is adapted; and therein plaintiff invested a large amount of money in the purchase of large quantities of tile and other materials, and did and performed and secured the performance of a great amount of labor in hauling said tile and materials to said farm, and purchased certain farming machinery, tools, horses, and equipment for use in cultivating and operating said farm, and entered into certain contracts to lease parts of said farm to other persons for farming operations, and contracted for and secured the loan of a large sum of money to be used by plaintiff in payment for said land; all of said matters and expenditures and arrangements being within the contemplation of plaintiff and defendant at the time of executing said contract and modification, and to be done by plaintiff in reliance on said contract and modification.

Par. 3. That, by reason of the said failure on the part of defendant to perform said contract, 'Exhibit A,' as modified by said indorsement, 'Exhibit B,' plaintiff sustained special damage involved in the said matters set out in paragraph 2 hereof to the amount of five hundred dollars ($500).

The defendant admitted the making of the contract for the sale of the real estate upon which plaintiff relies, and admitted the receipt of $1,000 on the purchase price, which he claims to have tendered plaintiff, with interest, before the commencement of this suit. He also averred that he had no title to the real estate which he undertook to sell, which plaintiff well knew; that he undertook to acquire the title, but failed therein; and that, "at the times said contracts were made, the defendant believed and had cause to believe that he could and would obtain the absolute title to said lands before November 1, 1909. This defendant at all times did all that could be done, both before and after November 1, 1909, to obtain said absolute title, and he has failed therein, and no part of said failure is due to any fault of the defendant."

He also averred that:

(4) On or about the 1st day of March, 1910, the defendant offered in writing to convey said real estate to the plaintiff, and tendered plaintiff his warranty deed therefor, accompanied by an abstract showing perfect title of record in the defendant. The terms and conditions of the title and of said conveyance are shown by said written offer, and a copy thereof is hereto attached, marked 'Exhibit A,' and made a part of this answer. Before the 1st day of March, 1910, the defendant acquired and obtained in himself the interest and status in the title to said real estate, which he tendered and offered to convey to the plaintiff, as aforesaid; and he was ready, willing, and able to convey said lands in compliance with said offer. The conveyance of the title and status thereof in said real estate offered to the plaintiff, as aforesaid, was the entire interest and title, and the only title that the defendant then, or at any time, had to convey, and the plaintiff then knew the same, and he refused and rejected said warranty deed, and said written offer and demand.

(5) The interest and title in said real estate that this defendant offered to convey was and is as valuable as the title specified and to be conveyed in the conditions, as re-

lated in Exhibit A, attached to the petition, and would have been of equal or greater benefit to the plaintiff.

The answer to the second count of the petition was as follows: "The defendant denies each and every allegation and statement in count 2 of the plaintiff's petition, and denies that the plaintiff performed any of the labor or furnished any of the material or did any other acts which he therein alleges, and the defendant alleges that said allegations and statements do not constitute and are not a cause of action upon which a recovery can be based."

The reply to this answer contained general and specific denials of the affirmative matters set out therein, and plaintiff also averred in this reply:

(3)   That at the time said written notice was delivered to plaintiff on March 4, 1910, said real estate therein described was incumbered by a mortgage lien conveying said real estate to secure the sum of $12,760, due March 1, 1920, without payment privileges, all in violation of the contracts, Exhibit A and Exhibit B, attached to plaintiff's petition.

(4)   That at the time of executing contract, Exhibit B of petition, on the 24th day of September, 1909, the defendant represented and stated to plaintiff that he had title to said lands, and was in position to perform said contract, said Exhibit A, as modified by said contract Exhibit B, and that if contract, Exhibit B, was entered into by plaintiff, then said defendant would fully perform said contracts, Exhibit A and Exhibit B, in the terms therein stated. That, in reliance on such statements and representations, plaintiff entered into and executed said contract, Exhibit B, and expended the sums of money in preparation for the use of said real estate for farming and in purchase of large quantities of tile and other materials, and did and performed and secured the performance of labor in hauling said tile and materials to said farm, and entered into contracts to lease parts of said farm to other persons for farming operations, and contracted for the loan of a large sum of money to be used in payments for said land, all as stated in count 2 of plaintiff's petition, and that plaintiff would not

have entered into said contract, Exhibit B, and would not have done or performed the acts and things stated in said count 2, in the absence of such representations and statements made by defendant. That defendant is, because of the matters above stated, now estopped from denying said statements and representations at that time made, and is estopped from denying that he then stated and represented that he held title to said lands, and was in position to and would perform said contracts, Exhibit A and Exhibit B of petition, and is estopped from pleading or setting up as a defense to said contracts, Exhibit A and Exhibit B of petition, any acts or offers as performance of said contracts, or as tender or offer of such performance, which do not strictly comply with the terms and conditions of said contracts here sued upon.

(5)   That at said date (September 24, 1909), and prior thereto, there was no mortgage lien upon said real estate, but that thereafter defendant executed and delivered a certain mortgage conveying said real estate to Mary E. Winter and Ida W. Frantz to secure the sum of $12,760, due March 1, 1920, without payment privileges, which said mortgage was, on March 1, 1910, filed for record and is now recorded in Book 25, page 94, of the mortgage records of Washington county, Iowa. That said defendant knew at the time said mortgage was given and delivered that he thereby rendered performance of his said contracts, Exhibit A and Exhibit B of petition, impossible, and that by reason of such mortgage being placed upon said real estate and title, thus making imperfect the said title, said land could not be conveyed as with perfect title, and payment for said lands could not be made as provided by said contracts, Exhibit A and Exhibit B of petition.

(6)   That said defendant caused such title to be so incumbered, and so prevented performance of his contracts with plaintiff, knowing that said real estate was of much greater value than the sum to be paid therefor by plaintiff, and with the intent and object on the part of defendant to himself hold and own said real estate, so as to secure said increased value, all of which defendant has since done.

(7)   That defendant was informed, in connection with said sale and the execution of said contracts, Exhibit A and Exhibit B of petition, that plaintiff expected to sell and

dispose of one or more 40-acre tracts of said real estate promptly after securing title to same, and therein would require, when said sales were made, that said tracts be released from the lien of the mortgage to be by him given, as provided by contracts A and B of petition; and defendant was informed that only on this condition and with this privilege would plaintiff enter into said contract.

This long statement as to the issues tendered by the pleadings seems necessary to a proper understanding of the points presented on the appeal. The trouble grows out of some contracts entered into between the parties as a result of plaintiff's effort to secure title to a certain one hundred and sixty acres of land which adjoined a tract already owned by him.

1. CONTRACTS
FOR THE SALE
OF LAND:
breach:
damages.

When the negotiations first opened, it was known to all the parties that defendant did not have the title, and that the land was owned by some relatives of his, who lived in the state of Maryland. Defendant was in the real estate business at Washington, in this state, and, although he did not have the sale of the land, he thought he could buy it, and as a result the parties entered into the following contract:

This agreement by and between Charles J. Winter, first party, and O. J. Cullumber, second party, witnesseth: That for the consideration hereinafter mentioned, first party agrees to sell, deed, and convey to second party the following described real estate in Washington county, Iowa, to wit, the northwest quarter of the northeast quarter and the east half of the northwest quarter, and the northeast quarter of the southwest quarter of section 13, township 76 north, range 9 west, 5th p. m., the same to be conveyed on March 1, 1910, by warranty deed accompanied by an abstract showing perfect title of record in first party. In consideration of the above, second party agrees to pay first party the sum of one thousand ($1,000.00) dollars cash in hand, the receipt whereof is hereby acknowledged, and the further sum of five thousand ($5,000.00) dollars in cash on delivery of deed and abstract, and to give to first party or his assigns a first mortgage upon said real estate in the whole sum of

thirteen thousand two hundred ($13,200.00) dollars, the same to bear interest at the rate of 5 percent per annum, payable annually and to come due ten years from date, second party to have the privilege of paying two hundred and fifty ($250.00) dollars or more of the principal upon any interest paying date. And it is expressly stipulated that when there shall be paid all interest due and the sum of three thousand three hundred ($3,300.00) dollars upon the principal for each amount so paid, second party shall be entitled to a release of this mortgage as to any forty acres of said real estate which he may elect. It is expressly stipulated and agreed that, whereas first party had not yet obtained the absolute title of said real estate from the owners thereof, if, therefore, he shall fail to obtain such title between this date and November 1, 1909, then he shall have the right to rescind this contract upon repayment to second party of said sum of one thousand ($1,000.00) dollars, with interest at 5½ percent from this date. Signed in duplicate this 18th day of September, A. D. 1909. Charles J. Winter, First Party. O. J. Cullumber, Second Party.

Immediately upon the signing of the contract, defendant telegraphed the owner of the land that he would give them $111 per acre for the land, $1,000 down, $4,000 March 1st, and balance at 5 percent, subject to terms. On the next day the owners telegraphed defendant the following answer: "Want one hundred twelve dollars per acre. Same terms you offered in telegram." To this defendant responded, saying he would give $111, and would make it 5½ percent instead of 5, and the owners wired back: "Accept last offer, see John Steward."

It seems that the John Steward, mentioned in this message, was agent for the owners of the land at Washington, and that on the same day the message was sent, to wit, September 22, 1909, one of the owners wrote Steward the following letter: "Cousin John: Since I wrote you we have heard from Charlie Winter and have decided to let him have the land on the following terms $111 per acre for the one hundred and sixty acres we wish to sell, $1,000

down, $4,000 March 1, 1910, tho balance, $12,760 secured by first mortgage payable at the expiration of ten years with interest at 5½ percent, payable annually. We told Charlie you were our agent and you would receive the payments. You will see Charlie and make such arrangements as are necessary. If an agreement is necessary, get a good lawyer to draw up same and send to us for signature."

The defendant testified that:

After receiving this telegram, I went out to see Mr. Cullumber and explained to him, and told him that he would have to allow 5½ percent on this back money, in order to secure the place under the contract. He said he would see his attorney, Mr. Brookhart. I came back to town and went to see Mr. Brookhart. At that time, I showed Mr. Brookhart the telegrams, Exhibits Nos. 2 and 3. This was about the 23d day of September, 1909, the day before Exhibit B was signed. I told Mr. Brookhart that these were the entire negotiations that had been made in this matter, and we recognized the difference, and I told him I wanted to carry out Mr. Cullumber's contract with me to the letter, and I says, 'Now, I will give you $50 if you see me through,' and he says, 'All right.' Q. Well, what was said about raising the rate of interest from 5 to 5½ percent, if anything? A. He says, 'If that is the only way you can buy it, it will have to be revised.' Q. If that was the only way? A. Yes; the 5½ percent. Q. Well, did you tell him what you had telegraphed to the parties? A. I did. Q. Well, now, have you stated practically all of the conversation that you had with Mr. Brookhart? A. I think so. Q. Now, Mr. Winter, you may state what day the modification of this contract, Exhibit B, was entered into with reference to the day you saw Mr. Brookhart? A. The next day, I think. Q. Now, state whether or not, prior to this memorandum, you had any other information or statements from the owners or their agents with reference to the terms upon which you were purchasing this real estate, or any other information regarding your purchasing or your ability to purchase it, or secure the title. A. I did not."

This testimony is contradicted, to some extent at least, by other parties; but as a result of the interview with plaintiff, after defendant had received the message hitherto set out, the original contract was modified by the following indorsement: "The within contract is modified by mutual agreement and the rate of interest shall be 5½ percent upon said $13,200.00 loan, instead of 5 percent, and said contract becomes absolute on the part of first party from this date. Signed this 24th day of September, 1909. Charles J. Winter, First Party.   A. J. Cullumber, Second Party."

The original contract is known in the record as "Exhibit A," and the modification as "Exhibit B." Believing, as he says, that this modification of the contract made it absolute in character, plaintiff arranged to borrow the money required to be paid under the contract, and on February 21, 1910, went to defendant's office to close up the trade, and was then informed by the defendant that he had not been able to secure title to the land, and was referred by defendant to his attorney. Again, on February 23d of the same year, plaintiff went to defendant and demanded performance of the agreement, and defendant then stated that he did not intend to carry out the contract. Again, on March 1st, plaintiff made a written demand of performance and an offer to comply with his part of the agreement, and again defendant refused to perform. As a matter of fact, defendant entered into a contract for the purchase of the lands with the agent, Steward (Stuart), dated October 7, 1909, whereby he (defendant) agreed to pay the owners the sum of $17,760 for the real estate in controversy, $1,000 of which was paid in cash, $4,000 on the 1st day of March, 1910, and the balance ($12,760) was to be secured by note and mortgage upon the land, payable March 1, 1920, with interest at the rate of 5½ percent per annum, payable annually at Washington, and providing that, if the interest was not paid when due, the whole amount might be declared due at any time by holder of the note

and mortgage. All fences on the premises belonging to the tenant were reserved by the vendors. Defendant endeavored to have the owner make a contract to correspond with the one he had with plaintiff, and also claims that he proposed to the then owners that they deed directly to plaintiff, taking his note and mortgage for the deferred payments, and that he finally went back to Maryland and tried to induce them to make a change in the contract, and that they would not do so. He also claims that almost immediately upon his return from Maryland, which was the third week in February, he saw the plaintiff, and told him it was impossible for him to perform his contract with him. So matters stood until March 1st, when plaintiff made a written offer of performance, and demanded that defendant comply with the terms of his contract. This defendant refused to do; but he did offer to deed the land to plaintiff, subject to the mortgage which he had placed thereon, which plaintiff was to assume, the consideration for the conveyance to be the sum of $19,200. This plaintiff refused to receive, and this action followed.

There can be no doubt, under the testimony, that upon the execution of the paper, known as "Exhibit B," defendant's contract became absolute, and according to plaintiff's testimony defendant at that time claimed to have entered into a contract for the purchase of the land, and had secured such right or title to the land as that he would be enabled to comply with his contract, as shown in Exhibits A and B, hitherto set out. Defendant claims, however, that plaintiff's agent or attorney was informed by defendant at the time Exhibit B was entered into of the nature of his contract with the owners of the land, and that the agent then knew he had not secured the title, and that whatever contract he may have had did not enable him to carry out the terms of the agreement shown by the said exhibits.

The only testimony to support this claim is that from the defendant, who said on the witness stand that he show-

ed this agent or attorney the telegrams which passed between him and the owners of the land; and it is contended that these were notice to plaintiff, through his agent or attorney, that he had no title, and of the nature of his contract with the owners. This is explicitly denied by the attorney and by the plaintiff, who were the only persons present; but the jury doubtless found that defendant did show the plaintiff's agent or attorney these telegrams. This matter is all-important because of the instructions given by the trial court, reading as follows:

(9)    You are instructed that the defendant claims that at the time of the execution of the contracts A and B he did not have title to said land, and that such fact was, at that time, known to plaintiff, and that he was prevented from making conveyance according to the contract, Exhibit A, and the modification thereof, Exhibit B, by unforeseen causes, which he could not control, and on this subject you are instructed that if at the time of the execution of the modification of the contract, Exhibit A, by Exhibit B, plaintiff knew that defendant did not have, and could not obtain so as to convey, the title, in accordance with said contract, as so modified, and you find that defendant acted honestly and in good faith in the matter, and tried to carry out his contracts, and that the failure by him to get the title, so as to convey it to plaintiff according to the terms of said contracts, Exhibits A and B, was not his (defendant's) fault, then, and in that case, the plaintiff would be entitled to recover for a breach of said contract on the part of defendant, if there was such breach, only nominal damages; that is, some small sum, such as a dollar, a dime, or the like.

(10)    If, however, you find from the evidence that at the time and just before the execution of the modification of the contract, being Exhibit B, on September 24, 1909, the defendant stated to plaintiff that he was in a position to carry out the contract and make the conveyance according to the terms of said contract, Exhibit A, as modified by Exhibit B, and that plaintiff did not then know that defendant did not have title, or could not convey title according to said contracts, then and in that case, if you find there was a breach of said contracts by the defendant, the plain-

tiff would be entitled to recover substantial damages, if any you find from the evidence, for the increased value of the land over the contract price, and the measure of such recovery, if you so find, will be given you in another instruction. If you find from the evidence that on March 1, 1910, the land in controversy was of no more value than the contract price, then your verdict should be for the defendant to that extent.

(11) As bearing on the question as whether or not the plaintiff had knowledge on September 24, 1909, at the time of the execution of Exhibit B, that defendant did not have title to the land, and could not get title, so as to convey to plaintiff on the terms of their contract, as modified, it is proper for you to take into consideration the fact that Mr. Brookhart was attorney for the plaintiff at that time, and the knowledge, if any, of said Brookhart of such matters, what was said at the time of the execution of Exhibit B by the parties then present, and all the testimony, and all other facts and circumstances in the case, as shown by the testimony bearing on that question.

(12) The undisputed evidence shows that S. W. Brookhart was the attorney and agent of plaintiff, Cullumber, in the preparation and execution of the contracts A and B on the 18th and 24th days of September, respectively, and it is a rule of law that notice to or knowledge of an attorney or agent is notice to the client or principal; therefore, if you find that on the 24th day of September, 1909, at the time of the execution of the contract, Exhibit B, said Brookhart knew what defendant's interest in the land was, and knew thereby that said Winter could not comply with the provisions of said contract, Exhibit B, it would have the same force and effect as if known by said Cullumber. Notice or knowledge of these matters to plaintiff's attorney, or to plaintiff himself, after September 24, 1909, would not have the effect of preventing plaintiff from recovering more than nominal damages, if the testimony shows, and you find, he has suffered substantial damages, as defined in the other instructions.

(13) You are instructed that if, at the time of the modification of the contract on September 24, 1909, and before the execution of Exhibit B, defendant said he was in a position to carry out his said contracts, and that plain-

tiff did not know that defendant would be unable to make the conveyance of the land in question according to the terms of Exhibits A and B, then, and in that case, the defendant would not have the right to tender a deed or performance of the contracts on different terms than those stated in the contracts, and such tender, if any, would not avail in this action, and would not prevent the recovery of substantial damages, if any have been shown in the higher value of the land than the contract price, if it was higher.

We are constrained to hold that, while these instructions, taken as a whole, correctly state the law as it exists in this state under the rules laid down in *Foley v. McKeegan,* 4 Iowa, 1; *Eggert v. Pratt,* 126 Iowa, 727, and other like cases, yet they are inapplicable to the facts disclosed by this record, and this rule of law, exceptional in character, should not have been announced as governing the case. The most that can be claimed under the testimony is that defendant showed plaintiff's agent or attorney the telegrams which he had received from the owners of the land. These did not disclose that defendant had not purchased the land under such terms that he could not comply with his contract with plaintiff. Indeed, unless defendant was intending to deceive, it is apparent that he himself thought he had such a contract with the owners of the land, and expressed surprise when the owners insisted upon his signing a contract which would not permit him to carry out his contract with plaintiff. Even after signing this contract, he thought that by seeing the owners personally he could get them to modify the contract, and he did not inform the plaintiff until his return from Maryland, late in February of the year 1910, that he could not perform his agreement. Plaintiff was led to believe that defendant had the necessary contracts which made it possible for him (defendant) to make his agreement with plaintiff absolute, and relying thereon, made arrangements for his money, purchased tile, etc., and had no knowledge of defendant's inability to perform until late in February.

In commenting upon the rule of the *Foley* case, *supra,* we said, in *Cornell v. Rodabaugh,* 117 Iowa, 289: "The principal question discussed relates to the measure of damages in a case of this kind. Appellants contend that if the vendor acts in good faith, and is prevented from conveying by unforeseen causes which he could not control, no more than nominal damages should be allowed merely for the failure to perform, and cites *Foley v. McKeegan,* 4 Iowa, 1; *Sweem v. Steele,* 5 Iowa, 352; *Beard v. Delaney,* 35 Iowa, 16; *Sawyer v. Warner,* 36 Iowa, 333; *Donner v. Redenbaugh,* 61 Iowa, 269. The language relied upon by appellants is found first in *Foley v. McKeegan,* and is quoted with approval in the other cases; but it is a part only of the rule laid down. We set out the statement of the rule upon which reliance is had, for the purpose of showing that appellants' case does not come even with its terms: 'If the vendor is honest, and can not convey because of unforeseen causes which he could not control, the vendee should recover only nominal damages. We believe that the measure of damages should depend upon the cause of the failure. If the person selling is honest, and is prevented from making the conveyance by unforeseen causes which he could not control, plaintiff should recover only nominal damages.' It will be noticed this language applies only to the honest vendor who can not convey, not to one who finds it merely somewhat expensive to do so. . . . The rule restricting damages in cases of this kind to those only nominal should not be extended. In 2 Sutherland, Damages, section 579, it is said: 'The reasoning upon which the damages have been made merely nominal against a defaulting vendor who has acted in good faith, and been prevented from performing by unforeseen causes, has not been entirely satisfactory, even to judges who have applied that rule in consequence of the supposed weight of general or local authority. . . . The vendor has the means of ascertaining his title; and where he undertakes absolutely to convey a particular

estate it is more consistent with the responsibility which the law attaches to all other undertakings to impose the obligation which it imports and the liability to make full compensation on default.' "

Again, in *Eggert's* case, *supra,* we said: "The question presented in argument is upon plaintiff's demand for substantial damages. It is shown that the land, at the date when it should have been conveyed according to the contract, was worth materially more than the agreed purchase price; and it is plaintiff's contention that defendant is answerable to him for the margin of profit thus lost. Had defendant represented herself as the owner of the land, and as such entered into the contract to convey it, she would ordinarily be subject to the rule relied upon by plaintiff, and liable to him in damages in the amount by which the market value of the land exceeds the contract price. But this rule has been held by us not to apply where, to the knowledge of both buyer and seller, the latter has no title, and, without fraud or bad faith on his part, fails to make or convey title in discharge of his contract. In such case, there can be no recovery for loss of profits. *Foley v. Mc-Keegan,* 4 Iowa, 1; *Sweem v. Steele,* 5 Iowa, 352; *Sawyer v. Warner,* 36 Iowa, 333; *Yokum v. McBride,* 56 Iowa, 139; *Donner v. Redenbaugh,* 61 Iowa, 269. See, also, cases to same point cited in 29 Am. & Eng. Enc. L. (2d Ed.) 724, note 10."

*Conner v. Baxter,* 124 Iowa, 227, announces the following rule: "Defendant unquestionably did assume to sell the entire half section of land. We may concede that he then believed in good faith that he could make the title; but that is not a material consideration. Plaintiff understood, and had the right to understand, that he was buying the entire property. The price was agreed upon, as well as the terms of payment. An advance payment was made. There was nothing left to do, save for the defendant to make the promised title and receive the remainder of the

cash payment and securities. He has failed to perform, and
plaintiff is entitled to recover his damages, unless the use
of the words 'all my right, title, and interest' in the printed
blank on which the contract was written affords him a door
of escape. As already stated, we are confident that these
words do not express the agreement or intent of the par-
ties, and we are not inclined to indulge in any excessive
refinement of reasoning to relieve him from liability."

Going back to the *Foley* case itself, it will be ob-
served that the court carefully announces the doctrine as
follows: "May a rule be recognized, then, which shall have
for its basis the giving of compensation for the injury, and
at the same time avoid injury to a vendor, who acts in good
faith? We believe there is such a rule sustained by au-
thority and reason, and which, while it may not in all cases
make the plaintiff whole, or give him full satisfaction, will
approximate it, and be as just and equitable as is con-
sistent with most general rules. We believe that the meas-
ure of damages should depend upon the cause of the fail-
ure. If the person selling is honest, and prevented from
making the conveyance by unforseen causes, and which he
could not control, the plaintiff should recover only nominal
damages. If he has paid the price, or any part thereof,
then, of course, in such a case, he should recover that sum,
with interest. But if the person selling is in fault, and
either did or should have known that he could not comply
with his undertaking, or, having the title, refuses to convey,
or, having title at the time of agreement, afterward disables
himself from completing it by a sale to a third person, or
at the time of the agreement knew he had no title, in these
and in all cases where the inability arises from fraud in
the covenantor, the purchaser should recover substantial
damages, 'including compensation for any actual loss, as by
the increased value of the land to the time the contract
should have been executed.' And without referring to the

authorities in detail to sustain this view, we cite" (see cases).

Since that time, the qualification has been added that plaintiff either knew, or in the exercise of ordinary care should have known, that defendant had no title. But without this qualification we are constrained to hold the rule inapplicable, because of the fact that defendant represented to plaintiff that he had secured such rights in or to the land as that he could sell it absolutely upon the terms proposed, and he either had such rights, or believed he had them; else he was guilty of fraud or deceit. On the other hand, if he knew, or should have known, that he could not comply with his undertaking, then the rule of the Foley case does not apply, so that, no matter what theory may be adopted, we think the case should have been submitted on the proposition that plaintiff was entitled to the benefit of his bargain, and because of defendant's refusal to perform the contract, was entitled to such damages as he was able to prove, growing out of defendant's breach of contract.

II.   Plaintiff offered to show that by reason of entering into the contract he went to the expense of borrowing money to meet the cash payment, due March 1st, purchased tile for draining the land, and secured additional teams, machinery, and appliances for farming the land, for which he had contracted. The trial court was of opinion that the second count of the petition did not contain sufficient averments for the allowance of special damages, and objections to the testimony tending to show such special damages were sustained. In this we think there was error. It is true that this second count was not, perhaps, as specific as it might have been made, and some of the statements were either of legal conclusions, or of conclusions of law and fact combined; but we are constrained to hold that they were sufficient to justify the admission of the testimony. Ordinarily such objections as are now made to the pleading should have been raised

2. SAME:
   damages:
   pleadings.

by motion for more specific statement, and not by objections to the testimony. At any rate, we think the averments were sufficient, and that plaintiff should have been allowed to prove the special damages, if any, suffered by him.

For the errors pointed out, the judgment must be, and it is, *reversed.*