E. S. BROWN, Appellee, v. W. A. VERZANI, Appellant.

**DAMAGES:**    Liquidated Damages and Penalty—Forfeiture Clauses —Construction.  A clause in a non-fraudulent contract providing that all payments made shall be forfeited in event of failure to comply with the contract, will not be treated as providing for *liquidated* damages, in the absence of some fair showing that the parties contemplated, or that the non-defaulting party actually suffered, damages in an amount *approximately the same as the payments made.*

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

THURSDAY, OCTOBER 18, 1917.

ACTION to specifically enforce a contract entered into between the plaintiff and the defendant, which contract was executed and delivered in South Dakota, October 29, 1912, covering an exchange of lands in South Dakota, and to recover damages claimed to have been sustained by reason of a breach of the contract by appellant, in case specific performance of the contract could not be had.

Defendant denied the validity of the contract and the right to specific performance thereof, because, as he alleged, the contract was signed and delivered upon the condition that the brothers and sisters of defendant, who owned interests in the land to be conveyed to plaintiff, should, after

being advised of the contract, approve and ratify the same
and join defendant in the conveyance to plaintiff; that his
brothers and sisters refused to so approve, making it im-
possible for defendant to convey the title, in accordance
with the contract, and because thereof the contract was
never completely delivered; second, that the execution and
delivery of the contract were induced by the fraudulent
representations of plaintiff with respect to the character
and value of the land which he was to convey to the de-
fendant, and that because of this fraud the contract was
rendered void and unenforcible; and third, that the ap-
pellee's title to the land was not good and merchantable.

At the time of the delivery of the contract, defendant
paid plaintiff $1,000 as a part of the consideration for
the exchange of the properties, and by cross-petition de-
fendant sought to recover back from plaintiff the $1,000
so paid, and he asked for general equitable relief. By the
terms of the contract, plaintiff sold to defendant 640 acres
of land in Lyman County, South Dakota, for a considera-
tion of $27,200, to be paid: $1,000 when the contract was
delivered; $4,000 on March 1, 1913, without interest before
due; $7,200 on March 1, 1918, with a first mortgage back;
and the remaining $15,000 to be paid to plaintiff by de-
fendant's conveying to plaintiff 160 acres of land in Clay
County, South Dakota; transfer of title and possession to
take place March 1, 1913. Under the contract, both par-
ties were to furnish abstracts showing good and merchanta-
ble title, and the contract provides:

"Time shall be understood to be of the essence of this
contract, and failure on the part of said second party (Ver-
zani) to fulfill all the covenants herein agreed to, shall
work a forfeiture of all his rights hereunder, including
the amount or amounts paid prior to that time."

The execution and delivery of the contract are ad-
mitted. Defendant alleges that, within the time specified

for performance of the contract, he orally notified plaintiff that his brothers and sisters would not convey, and demanded the surrender and cancellation of said contract and the return of the $1,000.

The alleged false representations are that the Lyman County land was first-class farm land in every respect and worth at least $40 an acre. The defendant alleges that he afterwards discovered that the land was infested with noxious and poisonous vegetation, and was unfit for live stock or for the purposes for which he bought the land, and that, by reason thereof, he notified plaintiff that he elected to rescind the contract, and that he would not carry out or perform the same. Defendant further alleges that the title was not merchantable and was encumbered with mortgages, judgments and taxes, and he says that it was orally agreed by and between plaintiff and defendant that the contract should be regarded as rescinded by mutual agreement, and the defendant acted and relied upon the agreement and rescission.

Defendant in his counterclaim pleaded the statute of South Dakota, where the contract was executed, which statute is as follows:

"Section 2345. Specific performance cannot be enforced against a party to a contract in any of the following cases:

"1. If he has not received an adequate consideration for the contract.

"2. If it is not, as to him, just and equitable.

"3. If his assent was obtained by misrepresentation, concealment, circumvention, or unfair practice of any party to whom performance would become due under the contract, or by any promise of such party which has not been substantially fulfilled; or,

"4. If his assent was given under the influence of mistake, misapprehension, or surprise, except that where

the contract provides for compensation in case of mistake, a mistake within the scope of such provision may be conpensated for, and the contract specifically enforced in other respects, if proper to be so enforced." Compiled Laws, 1913, Vol. 2, Civil Code.

He further alleges that said Section 2345, as above set forth, is now and at all the times in controversy herein was a valid and existing statute of the state of South Dakota, in which state the contract in controversy herein was made, executed and delivered.

The trial court dismissed plaintiff's petition and the defendant's cross-petition, and rendered judgment against plaintiff for costs. The defendant appeals.—*Reversed.*

*E. A. Burgess* and *J. J. McCarthy,* for appellant.

*C. N. Jepson, J. F. Stecker,* and *Evans & Evans,* for appellee.

PRESTON, J.—We take it that the real question in the case on this appeal is in reference to defendant's exception to the action of the trial court denying his right to recover from plaintiff the $1,000 which he paid plaintiff when the contract was signed and delivered. Appellant has argued the other matters set up as defenses, but we are satisfied with the findings of the trial court as to these, and the next question is as to the effect of such findings, and, as said, the real question is whether the $1,000 paid by defendant to plaintiff upon the execution of the contract should, under the record, be considered as liquidated damages, as found by the trial court.

DAMAGES: liquidated damages and penalty: forfeiture clauses: construction.

After the contract in question was entered into, plaintiff sold the land in Lyman County to another party. This was in April, 1914. Plaintiff testifies, in regard to his sale of the land to such other party:

"The transaction with Barrett was closed up volunta-

arily on my part, and he paid me the consideration that I asked for the land; that consideration was satisfactory to me; I never notified defendant Verzani that I had sold this Lyman County land in controversy."

The opinion and findings of the trial court are, substantially:

"That the contract for exchange was entered into substantially as claimed by plaintiff, and that the sum of $1,000 was paid to plaintiff by defendant, and that defendant entered into said contract in good faith and with the intention to perform the same, but that, through no fault of his, he was unable to perform, for the reason that the title to two thirds of the Clay County land was in other parties, and that they refused to convey or to permit the defendant to perform his contract. Under these conditions, the defendant would be liable to the plaintiff for nonperformance in nominal damages only.

"The court finds that the allegations of fraud and misrepresentation as made by the defendant are not sustained by the record, for the reason that it does not satisfactorily appear that the land of plaintiff was impregnated with alkali or other noxious substance, as alleged by defendant, and that if it was so impregnated, it does not satisfactorily appear that the plaintiff Brown had knowledge of such fact. It further appears that the defendant was warned by his sister, who was a part owner of the land, prior to his investigation and inspection of the land, 'to look out for alkali,' and that defendant made a personal inspection and investigation of the land before entering into the contract.

"The contention of defendant that the contract was executed and delivered upon the condition, or subject to the approval of the other parties interested, is not sustained by the evidence. The court is of the opinion that no such condition was made at the time of the execution and delivery of the contract. * * * While the defendant denies the

right of plaintiff to recover or retain this $1,000 cash payment, the court is of the opinion that the defendant is entitled to retain the same upon the theory that it is and was considered by the parties as liquidated damages for the nonperformance of the contract, and upon the further theory that the plaintiff has been damaged in that amount by reason of the nonperformance upon the part of the defendant."

The question as to whether the $1,000 paid by defendant should be considered a penalty, or liquidated damages, is not as fully argued as some of the other questions. Appellee argues that, notwithstanding the fact that appellant has argued numerous other questions, there are but two propositions involved in the appeal, and he says there are but two theories upon which appellant is entitled to recover the $1,000. The first is whether the contract was so tainted with fraud and misrepresentation on the part of appellee that appellant is entitled to have it set aside and recover damages therefor,—and as to this he says that there was no fraud, and that the trial court so found; and the second is that, even though there was no fraud, appellant is not entitled to recover. As to the last proposition, he argues that the contract expressly provides that a failure on defendant's part to fulfill his covenants should work a forfeiture. So that appellee's only reason for claiming that defendant is not entitled to recover the $1,000 is that, under the contract, it was to be considered as liquidated damages. Appellant contends that the provision of the contract in reference to the $1,000 is a forfeiture, or penalty, which will not be enforced in equity.

It is not claimed, as we understand it, that the South Dakota statute before set out cuts any figure on this question, in view of the findings of the trial court; although appellant argues that it is a South Dakota contract, and could not be specifically enforced under the statutes of that state,

because defendant was to receive no adequate considera-
tion, in that plaintiff's land was worthless; second, that
the contract is unjust and inequitable; and third, that
defendant's assent thereto was obtained by misrepresenta-
tion; and that, where a court of equity finds that a statute
forbids the enforcement of a contract, it will not forfeit to
plaintiff a partial payment, but, to prevent the perpetra-
tion of a wrong, will order plaintiff, on cross-petition of
defendant, to restore to defendant whatever he had paid in
part performance.     Appellant cites the statute before set
out; *Phelan v. Neary,* (S. D.) 117 N. W. 142; *Armour
Packing Co. v. United States,* 153 Fed. 1.

There may be force in appellant's claim that plaintiff's
land was worthless.  The court has discretion in the matter
of specific performance, and may consider all the circum-
stances.  Appellant concedes that the South Dakota statute
is merely a statutory declaration of the general principles
of jurisprudence, as defined and administered by the courts
of this country generally, including the courts of Iowa,
and cites the *Phelan* case, supra, to support this.  But in
view of our conclusion that, under the record, the provision
of the contract as to the $1,000 should not be considered
as liquidated damages, we do not feel called upon to deter-
mine appellant's proposition just referred to.  Under the
authorities, the fact that a contract uses the words for-
feiture, penalty, or liquidated damages, is not always con-
trolling.

The case  seems not to have been tried on the theory that
plaintiff sustained damages in an amount as much as $1,000,
and if it had been so claimed, we think the evidence would
not sustain such contention, nor do we think, from all the
circumstances of the case, that there was any considerable
amount of damage accruing to plaintiff, or that the parties
reasonably contemplated such.  Plaintiff could have shown
that he was damaged, if such was the fact, or the circum-

stances might be such as that the court can say that, plain-
tiff not having proved the exact amount, there was damage
approximating the amount claimed to have been fixed as
liquidated damages.

As we said in *Joeckel v. Johnson*, 178 Iowa 231, where,
under all the circumstances, the sum stipulated in the con-
tract as liquidated damages is out of all reasonable propor-
tion to the loss sustained or reasonably to be anticipated,
the stipulation will be treated as a penalty, since the right
to damages for breach of contract is founded upon com-
pensation and not gain; and where, from the nature of the
contract, the extent of the damages which would result
from the breach thereof is difficult or impossible of ascer-
tainment, the fact that the parties have deliberately named
a sum which should be treated as liquidated damages on
the happening of a breach, is a matter of importance in
determining the question. But in that case, though the
exact amount of damage was not proved, the circumstances
of the case showed that the party was damaged in approxi-
mately the amount fixed, so that the holding was that the
amount fixed should be considered as liquidated damages.

In the instant case, the trial court found that defend-
ant entered into the contract in good faith, and with the
intention to perform the same, but that, through no fault
of his, he was unable to perform, because the title was part-
ly in other parties, and found, too, that under such circum-
stances defendant would be liable to plaintiff, for nonper-
formance, in nominal damages only; but later in its find-
ing, or opinion, the court seemed to think that plaintiff
was entitled to retain the $1,000 as such nominal damages;
but, as he stated it, as liquidated damages. Under the
record, we think it is not shown that there was any dam-
age in any considerable amount, or any amount approxi-
mating $1,000.

At this point, appellee argues that, as he construes

appellant's argument, appellant admits that appellee would be entitled to retain out of the $1,000 whatever expenses he had been put to in looking at the land, and that this in itself is an admission that the $1,000 was agreed upon as liquidated damages. We do not understand appellant's argument to be that broad. If it were shown that such expenses were approximately $1,000, and that the parties so contemplated, there might be force in appellee's claim. The trouble about this is, as we view it, that appellee has not pointed out in argument what such expenses were, and we do not find in appellee's testimony that he testified on that subject. Defendant wrote a letter, December 15, 1912, to Sieh, the party claiming to have been the agent who brought these parties together, upon which plaintiff places some reliance; and in this letter, defendant said, in reference to the plaintiff's land: "I might as well drop the $1,000 I have in it and let you and Brown split it." But the same letter also says: "You were smooth enough to get a good mouthful, but I will head you off before you get your meal."

It is true that appellee, a resident of Sioux City, Iowa, testified that, after the making of the contract, he would think his Lyman County land had depreciated in value about $15 per acre. This, on the 640 acres, would amount to $9,600. We think it cannot be seriously claimed that plaintiff or the defendant contemplated that the $1,000 paid and referred to in the contract should cover such an item, and furthermore, we are not convinced from the record that there was any depreciation, and we doubt very much whether the land was worth $15 an acre. On cross-examination, plaintiff himself says, in reference to his land, that in this trade with defendant there was $12.50 per acre of wind. It is shown that plaintiff's land was in an alkali strip, and witnesses living near it testify that the plaintiff's land, and similar land in that locality, is not suitable for anything; that it is not good for grazing purposes, as

the stock becomes alkalied and worthless, lose their hoofs, hair, become lame, and finally die. The trial court found that plaintiff was not guilty of false representations in regard to the character of the land; but this was mainly on the ground, we take it, that plaintiff did not have knowledge of the character of the land. Witnesses living near the land in question testify as to its value and the alleged depreciation. One of them says that good land for that country sold for $15 per acre; that plaintiff's land was not as valuable as that; that he did not consider plaintiff's land of any value for stock-raising purposes; that he would not want it at all; that a person could sell it to speculators for $15 per acre; that for grazing purposes you would have to fool a man to sell it; that it had no market value in October, 1912; that there was a strip about 4 miles wide and 20 miles long of the alkali land. Another witness says that the reasonable market value of land unaffected with alkali in that vicinity, in the fall of 1912, was $15 per acre. Another witness testifies that the land in controversy, on October. 29, 1912, was worth $8 per acre for speculating purposes, but for stock purposes it was not worth anything, and that nothing occurred between October 29, 1912, and March 1, 1913, to cause land values to fluctuate in the vicinity of the Brown land. Other witnesses give similar testimony.

Appellee relies at this point on the case of *Burton v. Ryther*, (S. D.) 161 N. W. 350. Appellant contends that the case can have no application because in that case the court held that the damages as liquidated by the contract amounted to the rental value of the property, and that, therefore, the vendor was entitled to retain the money paid on the contract.

Appellant contends that, where a party in good faith enters into a contract to convey land which at the time is owned by himself and others, who refuse to convey their interest according to the contract, and the party contract-

ing is unable to perform upon his part, plaintiff should be allowed to recover only the necessary expenses, if any, of inspecting the land and making the contract, and that defendant should be allowed to recover any money paid by him in part performance, less such expenses, and cites Black on Rescission & Cancellation of Contracts, Sec. 211; *Cullumber v. Winter,* 154 Iowa 263; *Eggert v. Pratt,* 126 Iowa 727; 3 Elliott on Contracts, Sec. 2285.

Appellant also contends that, because plaintiff sold his land to other parties, and pending his action for specific performance, wherein defendant was resisting upon the ground that the contract is non-enforcible because induced by fraud, and because of his inability to perform, through no fault of his own, there was an adoption of the renunciation of the defendant, and a voluntary rescission of the contract upon his own part; and that, because plaintiff, by so alienating his own title during the pendency of his suit for specific performance, made it impossible for himself to specifically perform, he was bound to restore to defendant the $1,000 and place defendant *in statu quo;* and cites in support of this *McWhirter v. Crawford,* 104 Iowa 550, *Wright v. Swigert,* 172 Iowa 743, *Miller v. McConnell,* 179 Iowa 377, *Waters v. Pearson,* 163 Iowa 391, *Prichard v. Mulhall,* 127 Iowa 545. As having some bearing, see, also, *Pardoe v. Jones,* 161 Iowa 426.

This may be so, but we shall not take the time to review the cases, or discuss the evidence as to whether there was a rescission by consent, or a mutual abandonment by both parties. It is enough to say that we hold, in view of the evidence before set out, and our discussion of the question as to the payment of the $1,000, and the provision in the contract with reference thereto, and under all the circumstances of this case, that the $1,000 was not liquidated damages, as contended by appellee.

It follows, then, that the trial court was in error in holding otherwise. The judgment and decree of the district court is reversed. Defendant may have a decree in the dis-- trict court or in this court, at his election.—*Reversed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.