GUTHRIE ICE COMPANY, Appellee, v. H. S. SELBY, Appellant.

Subscription to stock: PLEADINGS: ESTOPPEL. Where both parties to an action upon a stock subscription alleged that the agreement was partly oral and not fully set out in the writing, neither could complain that the case was tried and submitted on that theory. ·

Same: PAROL EVIDENCE: VARIANCE: WAIVER OF CONDITIONS. Even though orally understood that a subscription to stock when made should not be binding unless a certain sum was subscribed, parol evidence that a subscriber consented to the organization of the company before the full amount was subscribed, was competent for the purpose of showing a waiver of the condition.

Same. It is also competent to show by parol that it was understood by defendant and the party obtaining his subscription that it was not to become a subscription in fact until a certain sum had thus been raised by other subscriptions. ·

Appeal: REVIEW OF VERDICT. Where the evidence justified submission of both plaintiff's cause of action and defendant's defense, a verdict for plaintiff under instructions favorable to defendant will not be disturbed on appeal.

*Appeal from Guthrie District Court.*—HON. J. H. APPLEGATE, Judge.

TUESDAY, JUNE 23, 1914.

ACTION at law to recover upon defendant's subscription to the capital stock of the plaintiff company. Verdict and judgment for the plaintiff, and defendant appeals.—*Affirmed.*

*Weeks, Vincent & Weeks,* for appellant.

*Milligan & Moore,* for appellee.

WEAVER, J.—A movement was inaugurated in the city of Guthrie for the organization of a corporation to be known as

the Guthrie Ice Company, and it is alleged that subscription papers were circulated to secure subscribers to its capital stock. The body of said subscription paper was in the following form:

Stock Subscription. Guthrie Ice Co., Guthrie Center, Iowa. We whose names are hereunto signed do hereby subscribe in the proportions hereafter set opposite our respective names for the stock of an ice plant to be incorporated under the laws of the state of Iowa, with a capital of twelve thousand dollars, divided into one hundred and twenty shares of the par value of one hundred dollars each, the said corporation to be located in the town of Guthrie Center, state of Iowa, and to be called the Guthrie Ice Company. Fifty per cent. of said capital shall be paid up, on call of the board of directors, and the balance to be paid in installments, as may be required thereafter, but no part of said amount above fifty per cent. shall be called for for a year from the completion of the corporation.

Upon these papers subscriptions were taken to the amount of ninety-seven shares, or $9,700, and the organization of the company with an authorized capital of $12,000 duly completed. Among the subscribers above mentioned was the defendant, Selby, who subscribed for five shares. Having refused to pay for said shares, and denying liability on the subscription, this action was begun to recover the first installment thereon.

The fact of the subscription is not contested, but liability thereon is denied on the following grounds: The answer alleges that the paper which the defendant signed was being circulated merely as a preliminary list to ascertain the public sentiment of the community with reference to the proposed enterprise, and ascertain if it was possible to raise the sum of $12,000 for that purpose. He further alleges that the contract was partly oral and partly in the writing signed by him, and that it was understood and agreed between him and one Harney, who took his subscription, that he was not to be bound thereby, unless the full sum of $12,000 was subscribed, and that the instrument so signed by him was to be retained by

Harney, and that no use was to be made thereof until the condition that the full amount should be subscribed was complied with. He further alleges that, the promoters of the proposed corporation having failed to obtain a stock subscription to the full sum of $12,000, the project was for a time abandoned, and that after such abandonment, and before anything was done to revive or reinstate the enterprise, he notified Harney that he would no longer be bound by such subscription, and directed Harney to remove his name from the list. Replying to the answer, plaintiff concedes that the agreement and understanding with the defendant was partly in writing and partly oral, and alleges that, instead of the oral terms of such contract being as pleaded in the answer, it was understood and agreed with defendant that it would not be necessary to procure stock subscriptions to the full amount of $12,000, and, if the aggregate thereof should reach somewhere from $8,000 to $10,000, it would be sufficient to accomplish the intended purpose, and the corporation should proceed with its organization and enter its proposed business. By an amendment to the petition the substance of the affirmative matter in the reply was there repleaded, and it is further alleged that the ice plant erected by said corporation is located very near defendant's place of business, and defendant well knew plaintiff was proceeding to purchase machinery and make other large expenditures of money on the faith of said stock subscription, but he remained silent, not revealing his intention to refuse payment or to accept the shares of stock taken by him, until after such expense had been incurred, by reason of all which he should be held to have waived any right he may have had to repudiate his subscription, and that he is thereby estopped to rely on the defense pleaded. Upon these issues the case was tried to a jury, and verdict returned for the plaintiff.

The court's instructions to the jury were, in effect, that the written stock subscription having been made prior to the incorporation of the company, and having contemplated by its terms a capital stock of $12,000, which amount, it is con-

ceded, was not fully subscribed, the defendant, as a subscriber thereto for five shares, would not be liable upon such agreement, and plaintiff could not recover thereon unless the jury should find by a preponderance of the evidence that defendant waived such condition. With reference to the other defense the court further instructed that, if the paper signed by the defendant was circulated and signed as a mere preliminary list for the purpose of ascertaining whether the required sum could be raised among the citizens of Guthrie Center, and that when defendant signed it his subscription was left with Harney with the agreement and understanding that there should be no liability on his part unless the full sum of $12,000 should be subscribed, then the defendant incurred no liability, and there could be no recovery in this action. It is manifest from the verdict returned that the jury found both of these issues of fact against the defendant.

I. The essence of the argument in support of the appeal is: First, that the trial court erred in permitting oral evidence

1. SUBSCRIPTION TO STOCK: pleadings: estoppel.

of the alleged waiver or consent by the defendant that the company could be organized upon the basis of a subscribed capital of less than $12,000.

It is to be remembered that the pleadings of both parties concede that the contract with reference to this subscription was not all embodied in the writing, but was partly oral, and the court should not be charged with error for trying the case on that theory.

But, if we understand counsel, it is urged that, even admitting this proposition, plaintiff was allowed to exceed the proper limit of parol evidence upon an issue of this kind and

2. SAME: parol evidence: variance: waiver of condition.

testify to matters contradicting or varying the written part of this agreement. This, we think, is not the case. The evidence of the witness Harney, when reduced to its final form, is to the effect that he took the subscription paper to the defendant, who signed it for five shares with little, if any, hesitation or

discussion, but, after making the subscription, and before the parties separated, a talk was had between them to the effect that a subscribed capital of $8,000 to $10,000 would be sufficient for the intended purpose, and that, relying upon such understanding, the corporation was organized with an authorized capital of $12,000, of which $9,700 was duly subscribed. Even if we were to go to the extent now urged by appellant, and say that an oral understanding of this kind before the execution of the writing would be incompetent to affect the writing, such rule could not properly be extended to exclude evidence of subsequent understandings on which plaintiff could reasonably rely as a waiver of a condition contained in that instrument. In other words, if, after signing the subscription paper, the defendant consented to the organization of the company upon securing subscriptions to an amount of $8,000 to $10,000, or if the terms of that interview were such that Harney could reasonably understand, and did understand, that defendant consented to an organization on that basis, and defendant allowed him and others associated in the enterprise to proceed with the incorporation upon the understanding so derived, he cannot escape liability thereon under the rule excluding oral evidence affecting the terms of a written contract. The rule referred to has never been extended by us to exclude evidence of oral agreements and understandings which have been performed or acted upon, waiving or modifying the terms of a written contract. The rulings and instructions of the trial court on this branch of the case are in harmony with this view, and we find no error therein.

II. It is further argued that there is no sufficient evidence on which the jury could have based the verdict in this case. This proposition is founded, we presume, on the contention of

3. SAME.

the appellant which we have already mentioned, that the testimony on the part of plaintiff as to the agreement and understanding of the parties is incompetent. Yet defendant, while asking us to rule out the testimony of the alleged agreement or understanding be-

tween him and Harney that a subscription of less than $12,000 would be sufficient to justify proceeding with the organization, is just as insistent that we hold it competent for him to prove it was understood and agreed between him and Harney that his written subscription to the stock was not a subscription in fact, but was to be held in escrow until certain conditions had been performed. We are inclined to hold the evidence competent in both instances, and further that, even if technically incompetent, its admission under the allegations of the pleadings and the attitude assumed by the parties on the trial put both parties in such position that neither can assign error thereon.

The essential questions in the case are those of fact. The alleged cause of action and the defense pleaded thereto were each sustained by evidence on which the parties were entitled to the verdict of the jury. It was submitted upon instructions which, while entirely fair, were distinctly favorable to the defendant, but the verdict therein is against him, and we cannot properly interfere.

4. APPEAL: review of verdict.

We find no prejudicial error in the record and the judgment below is—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concur.