P. J. LIEUWEN, Appellant, v. JOHN BLAU, Appellee.

**VENDOR AND PURCHASER:** Rescission—Ineffectual Forfeiture. 1  A vendor who, in his written declaration of forfeiture, assumes (unnecessarily, perhaps,) to describe the land to be affected by the forfeiture, must describe the land actually covered by the contract in fact—not as the land has by mutual mistake, been described in the written contract.  (See Sec. 4299, Code Supp., 1913.)

**VENDOR AND PURCHASER:** Rescission—Automatic Forfeiture. 2  A vendee *who is wholly in default* works a complete forfeiture of all his rights under a contract by the act of instituting against the vendor, *who is not in default,* suit for the recovery of a preliminary payment which vendee has contracted to forfeit in case he did default.

*Appeal from Wright District Court.*—H. E. FRY, Judge.

SEPTEMBER 21, 1918.

ACTION to recover money paid on the purchase price of land, on the theory that the contract provided for the purchase of land which the seller did not own. Cross-petition asking reformation of the contract. Opinion states the facts. Plaintiff appeals.—*Affirmed.*

*Berry & Hill* and *Robert Healy,* for appellant.

*E. P. Andrews* and *Birdsall & Birdsall,* for appellee.

GAYNOR, J.—This action was commenced on the 21st day of April, 1915, to recover a certain sum of money paid to the defendant on the purchase of certain lands. Recovery is sought on the alleged ground that the title to the land purchased has failed. The petition alleges that, on the 19th day of September, 1914, the defendant falsely and fraudulently represented to the plaintiff that he was the owner of the north fractional half of the northwest fractional quarter and the northeast fractional quarter of the northwest fractional quarter of Section 1, except the Minneapolis & St. Louis right of way, containing 155 acres, more or less; that the plaintiff, believing this to be true, entered into a written contract to purchase the same for $17,000; that no deed has been executed; that $500 was paid, as a part of the purchase price, at the time the contract was executed; that the defendant did not own the land described, except the northeast fractional quarter of the northwest fractional quarter; that, on or about April 13, 1915, as soon as the plaintiff ascertained that the defendant did not own all the land described in the contract, he demanded a return of the $500, and was refused. To recover this $500, the action was brought.

1. VENDOR AND PURCHASER: rescission: ineffectual forfeiture.

The answer admits the signing of the contract, but denies that it was signed through any fraudulent representations made by the defendant; admits that $500 was paid; admits that the defendant did not own all the land described in the contract referred to in the petition, but avers that the defendant did own the north fractional one half of the *northeast* fractional quarter, and the northeast fractional quarter of the northwest fractional quarter of Section 1; that the land in fact owned by the defendant was

the land sold by the defendant to the plaintiff; that plaintiff had full knowledge that the land actually owned by the defendant was the land intended to be sold and in fact sold to the plaintiff and intended to be covered by the contract; that the error in writing the description of the land in the contract was made by the plaintiff, to whom was left the work of preparing the written evidence of the contract; that the defendant relied upon the plaintiff to insert the proper description; that the defendant was not able to read or write the English language.

The defendant, by way of cross-petition, says that he listed with the plaintiff, as agent, for sale, the land which he actually owned, and plaintiff was familiar with its location. Thereafter, plaintiff proposed to purchase the land himself. Thereupon, the defendant agreed to sell to plaintiff the land so listed with plaintiff, and the contract referred to in plaintiff's petition was accordingly drawn up and signed by both parties. The contract was prepared by the plaintiff, and the description complained of was placed in the contract through mistake. Neither party discovered the error in the description at the time the contract was signed. It was the intention of both parties to correctly describe the premises in fact owned by the defendant. After the contract was made, the defendant, as provided in the contract, furnished the plaintiff with an abstract of title. This abstract showed title in the defendant to the land which the defendant actually owned and sold to the plaintiff. By the terms of the contract, defendant was to convey the land to the plaintiff on February 1, 1915. Before that date arrived, the defendant made and executed a warranty deed, in which the true description was inserted. Up to this time, both parties treated the contract as containing the correct description. On March 3d, the defendant tendered a deed of conveyance to the plaintiff of the land actually sold. The contract provided, among other things, that, upon default

made in the payments or the conditions of the contract, all payments made prior to the default should be forfeited. The plaintiff failed to make the payments under the contract, as required by the contract, and refused to carry out the provisions of the contract. The defendant asks a decree reforming the writing so that it may and will correctly express the real contract, and correctly describe the premises in fact owned by the defendant, and in fact intended to be covered by the writing; and further, that plaintiff be declared to have forfeited to the defendant the $500 paid, and all rights under the contract.

Upon the issues thus tendered, the cause was submitted, and a decree entered for the defendant, dismissing plaintiff's petition, reforming the contract, and forfeiting all plaintiff's rights in the contract and to the money paid. Plaintiff appeals.

The record discloses that defendant was in fact the owner of the north fractional half of the *northeast* quarter of Section 1, and the northeast quarter of the northwest quarter of Section 1; that this land was listed for sale by the defendant with the plaintiff as agent; that this is the land which the plaintiff proposed to buy, and that this is the land which the defendant intended to sell to the plaintiff. When the written contract was prepared, the plaintiff believed that he was purchasing this land. The defendant believed, when he signed the contract, that he was selling to the plaintiff this land. Before the contract was written out and signed, some uncertainty arose as to the correct description of the land. Through want of knowledge of the true governmental description, the description appearing in the contract as signed was erroneously entered, to wit, the north one half of the *northwest* quarter, instead of the north half of the *northeast* quarter. It is clear in this record that the intention of the plaintiff was to buy the land owned by the defendant, to wit, the north half of the *north-*

*east* quarter. It was the intention of the defendant to sell the north half of the *northeast* quarter. The defendant never claimed to the plaintiff to own any land in the northwest quarter, except the northeast quarter of the northwest quarter. When the contract was written and signed, both parties believed that the land actually owned by the defendant was correctly described in the contract. There was a mutual mistake, but no fraud. Neither party seemed to have discovered the error in the writing until later. The defendant discovered it for the first time when he undertook to make a deed in fulfilment of his contract. His attention was then called to the fact of the error in description. He caused a deed to be prepared, conveying his title in the land which he actually owned. He caused an abstract to be prepared showing the title in him to the land actually owned by him, to wit, the north half of the *northeast* quarter, and the northeast quarter of the northwest quarter of Section 1. The contract, by its terms, was to be performed on the 1st of February. The agreement to perform was mutual and reciprocal. The plaintiff agreed to pay $1,500 on the 1st day of February, 1915, and on said date to execute to the defendant a mortgage for $15,000, due in five years from the 1st of February, 1915, with 6 per cent interest. The defendant agreed to furnish an abstract showing title to the property. The plaintiff agreed, upon receipt of the abstract, to return the same to the defendant, with objections, if any, in writing, for the correction of such defects, if any, by the defendant. Plaintiff received the abstract, and returned it to defendant without comment.

Plaintiff testified: "I would have been satisfied, if I had got the land that I thought I was buying, and that he was selling." The deed with the proper description was actually tendered to the plaintiff on March 3, 1915, though effort had been made to reach the plaintiff before. The tender was made on condition that he perform the require-

ments of his contract. He did not perform or offer to perform. No legal steps were taken by the defendant to forfeit the contract, up to that time. Neither party had repudiated nor attempted to repudiate the contract.

On the 27th day of March, 1915, the defendant attempted to forfeit the contract by serving written notice on the plaintiff, under the provisions of Sections 4299 and 4300, Code of 1897. Section 4299 reads as follows:

"Any contract hereafter made for the sale of real estate * * * and which provides for the forfeiture of vendee's rights * * * upon the happening of certain conditions, shall not be forfeited or canceled unless, thirty days before a declaration of forfeiture is made, a written notice be served on the vendee or assignee * * * and on the party in possession * * * and shall contain a declaration of an intention to forfeit said contract, and the reason therefor."

"Section 4300. For the period of thirty days after service of said notice the vendee, or those claiming under him, may discharge any unpaid payment and costs of service of notice * * * or perform any condition broken."

This notice became ineffectual as a notice of forfeiture, for the reason that, in the notice, the land was described erroneously, as in the contract. The real contract was for the purchase of the land actually owned by the defendant. The defendant did not own the land described in the contract. Therefore, the notice of forfeiture of rights in the land which the defendant did not own did not become effectual to forfeit the rights of the plaintiff in lands which the defendant did own, and which were, in fact, the subject of sale. The notice was, therefore, ineffectual for any purpose under the statute. *Wolke v. Watts & Co.*, 125 Iowa 321. Therefore, there was no legal forfeiture of plaintiff's rights to the land actually sold, at the time this action was commenced.

The rights of the parties in this suit must be determined

as of the date the suit was commenced. At that time, the right of each to enforce the contract was unaffected by any

2. **VENDOR AND PURCHASER: rescission; automatic forfeiture.**

previous conduct. Before the commencement of the suit, the error in the written contract was discovered by both parties. Both parties then knew that the writing did not express the real contract between them. Before the commencement of this action, the defendant had tendered to the plaintiff a deed to the property covered by the contract as actually made, together with an abstract showing perfect title in the defendant to the land sought to be conveyed. It was after this that plaintiff began his action to recover the portion of the purchase price paid. He based this on the sole ground that he had been induced by the fraud of the defendant to enter into the written contract. The payment of $500 took the contract out of the statute of frauds. The contract was effectual as a contract for the conveyance of real estate without the writing. What was the effect, then, of bringing this action? The effect was to repudiate the contract, not only as written, but as actually made. There was no fault on the part of the defendant. Defendant had done all that his contract required him to do. He had presented the plaintiff with an abstract, as stipulated. He executed and tendered to the plaintiff **a sufficient warranty deed to the premises actually sold.** The plaintiff refused to accept the deed, and refused to perform the contract on his part, and brought this action. There was a clear repudiation of the contract on the part of the plaintiff; and we think the allegations in the petition of fraud were a mere subterfuge, to avoid the effect of his act in repudiating the contract. It is true that a mere failure to perform within the time stipulated does not have the effect of relieving the other party from performance on his part. The obligation to perform remains mutual, until the contract actually made is rescinded or repudiated. **One**

party to a contract cannot rescind a contract, any more than one party can make a contract. But if one party exposes a purpose, an intent, a desire to repudiate, the other may accept him at his word, and the contract will be at an end. In this case, the plaintiff not only failed to meet the requirements of the contract on his part, but brought this action to recover what he had already paid upon the contract, which was a manifest declaration of an intention not to abide by the contract. When the plaintiff brought this action, he knew that the writing did not properly describe the land purchased, and intended to be covered by the contract. He knew that this misdescription was the result of mutual mistake. There was no mistake as to the land to be conveyed. The only mistake was in the governmental description of the land. We say, therefore, that the allegations of plaintiff's petition are mere subterfuge, for the reason that plaintiff knew the land that he purchased; knew that there was a mistake in the writing of the governmental description of the land actually purchased; knew that the defendant had tendered him a deed to the land that he actually purchased; knew that the defendant had furnished him an abstract showing title to the land which he had purchased; knew that the defendant had done all that was required of him to be done on his part. We think the bringing of an action was a repudiation of the contract on the part of the plaintiff. There was no need to reform the contract. This, however, did not prejudice any rights which the plaintiff had in the premises. Plaintiff, having failed to perform, and having repudiated his contract, by voluntarily withdrawing from its performance, is in no position to recover any part of the purchase price paid, and the court was right in so determining. Plaintiff having declared his purpose to repudiate the contract and to withdraw from its performance, the court committed no error in declaring the contract to be at an end. Equity looks

back of the writing to the contract that was actually entered into between the parties, and, having ascertained that, considers and adjusts rights from that viewpoint. Equity never reforms the contract. If there be a writing, intended to express the contract, which does not express it truly, and it is made to appear that this is due to a mutual mistake of the parties, the court may, if necessary to a proper adjustment of the rights under the contract as actually made, reform the writing so as to make it express the true intent and purpose of the parties, and the actual contract as made. Equity recognizes no rights under the contract greater than the contract itself gives. The writing is intended merely as evidence of the contract. The evidence of the contract may be reformed; but the contract stands, and must stand, as it was made by the parties, and their rights measured by that. In this case, proof of the actual contract was essential, that the defendant might show performance on his part of the contract as actually made. It was not necessary to reform the contract, because, under the record, the contract should not be enforced.

There is much controversy in argument over what we denominate "inferences to be drawn from the record," but the record itself and all legitimate inferences from the record support the conclusions of fact which we have stated above. We think the plaintiff has not acted in good faith in this transaction, and the positions he assumes are not tenable under the record.

Finding no error, the case is, therefore,—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.