J. H. MONTGOMERY, Appellant, v. F. X. BELLER et al., Appellees.

JANUARY 8, 1929.

*F. E. Northup*, for appellant.

*E. N. Farber*, for F. X. Beller, appellee.

*C. H. E. Boardman*, for L. A. Andrew, receiver, appellee.

KINDIG, J.—J. H. Montgomery, the plaintiff and appellant,

entered into a written contract, by the terms of which he agreed to convey to A. B. Pond approximately 279.32 acres of land in Marshall County. The date of this written undertaking was July 16, 1915, and the consideration named therein was $46,858.53. All the principal, under the stipulation, was to be paid by the vendee to the vendor March 1, 1926. Pond, the vendee, sold his interest, and such transferee, in turn, resold, until finally the equity in approximately 120 acres of the tract was purchased by the appellee Dr. F. X. Beller, and the remaining 159.32 acres were bought by the appellee M. L. Mundy. That transaction was not accomplished by the assignment of the original contract between Montgomery and Pond, but was effected by an independent written compact, under the terms of which each respective vendee agreed to buy, not the entire acreage, but rather, the respective portions above suggested. In doing this, the individual transferee did not undertake to pay the total consideration of $46,858.53, or any part thereof, named in the original Montgomery-Pond agreement, but rather, the obligations created by the new transactions were such in amount as were definitely designated in the said specific writings which, as above indicated, were entered into separately by Beller and Mundy for the respective parcels of land before named. However, in the aggregate, these distinct sums approximated the original purchase price named in the Montgomery-Pond contract.

Immediately after acquiring these interests, Beller and Mundy took possession of their respective premises. This was nearly six years before March 1, 1926. During that period, appellant, J. H. Montgomery, was represented by his son, Willard Montgomery, and by the Iowa Savings Bank, of Marshalltown. Interest, therefore, was paid by appellee Beller each year, either to the appellant or his said agents in his behalf. Not only was this true, but, in addition thereto, appellee Beller paid the taxes during this interim on the 120 acres aforesaid. Later, alterations and improvements were made upon the farm. Appellant, during this time, made no objection to appellee Beller's so occupying the premises and paying the interest and taxes in the manner and way just related. Protestation was made by appellant because appellee Beller cut down certain trees, but the complaint at that time was not because appellee had possession of a

portion of the premises, but rather, because appellant did not desire the trees removed.

Finally, on or about March 3, 1926, after the Montgomery-Pond contract became due, there was a meeting called by appellant, and accordingly it was held. At such conference were, among others, appellant and the appellees Beller and Mundy. Admittedly, the purpose of this gathering was, as declared by the witnesses, to accomplish a settlement between appellant and the appellees Beller and Mundy, and if such was not brought about then, appellant would at once commence the necessary procedure to declare a forfeiture of the original Montgomery-Pond contract. A conflict arises concerning the result of the attempted adjustment of the differences. Beller contends that it was there understood between him and appellant that he was to pay the interest on his portion of the indebtedness to March 1, 1926, and $1,500 on the principal. The remaining $21,500 of this part of the consideration was to be evidenced by a promissory note, due in five years, secured by a mortgage upon the 120 acres. Mundy insists that he was to have a separate contract with appellant for the 160 acres for the sum of $23,347. These claims are denied by appellant.

So, on or about July 6, 1926, appellant caused to be served upon A. B. Pond and appellees Beller, Mundy, and others, a notice of forfeiture for the non-performance of the Montgomery-Pond agreement. Following this, on October 8, 1926, the present proceedings were brought in the district court of Marshall County, to quiet the title to the entire land in Montgomery, and complete forfeiture of the said original contract with Pond. Additional redress in the nature of a foreclosure of the contract was prayed in the alternative.

As a result of the trial, the forfeiture was denied, and appellant's alternate prayer for foreclosure was granted, so far as the appellee Mundy and his 160 acres of said realty are concerned. Auxiliary to this relief, the court appointed appellant's son, Willard, receiver, to collect the rents and profits during the year of redemption. On the other hand, both the demands for a forfeiture and foreclosure were denied appellant in reference to the 120 acres purchased by the appellee Beller. Furthermore, the trial court found that there was a contract between appellee Beller and appellant, to the effect that, upon the payment of the

interest due March 1, 1926, and $1,500 on the principal, the former was to receive a deed for the premises, and the latter was thereupon to be given a note and mortgage, as before described. Pond, the original vendee, disclaims any interest in the controversy, and is not given further consideration here.

Whereupon, appellant demands a reversal.

I. Was appellant entitled to a forfeiture? We think not. Section 12390 of the 1924 Code provides:

"Such forfeiture and cancellation [of a real estate contract] shall be initiated by the vendor * * * by serving or causing to be served on the vendee * * * and on the party in possession of said real estate, a written notice which shall: 1. * * * accurately describe the real estate covered thereby. * * * "

Description of the real estate contained in appellant's notice of forfeiture was not accurate, because it omitted 40 acres of the premises. Consequently, the result of this "notice" was to ask  the vendees to pay a consideration, not for the tract of land purchased, but a different parcel, containing 40 acres less. By thus eliminating a portion of the tract, appellant could not compel appellees to pay the original purchase price. Declaration of forfeiture was intended for the entire farm, not for some lesser portion. Hence appellant is in the position of seeking a forfeiture of a contract on 279.32 acres, while the notice therefor included only 239.32. Such omission is fatal to appellant's cause. Even under a previous Code, when the requirement was not that the real estate be accurately described, it was held by this court that an erroneous description barred a forfeiture. *Wolke v. Watts & Co.*, 125 Iowa 321; *Lieuwen v. Blau*, 184 Iowa 327.

Within the purview of the statute above quoted, requiring an "accurate description," the omission amounts to an "erroneous" description of the land. Appellees, or their grantors, did not agree to purchase the land described in the appellant's notice of forfeiture, but rather, they undertook and intended to buy property the necessary description of which would include the additional 40 acres. *Wolke v. Watts & Co.*, supra, declares:

"Proceedings to effect the forfeiture of a right, as said, are to be strictly pursued, and for this reason it is unnecessary to

indulge in speculation as to whether plaintiff must have understood from the notice that the land purchased by him from Watts & Co. was intended. Oral advice might have furnished information, and yet no one would contend it would have been sufficient notice.''

Clearly, then, in view of the express statute demanding an ''accurate description,'' there can be no forfeiture in this case, because the notice erroneously described the realty. Therefore, the district court properly refused the forfeiture as to both appellees Beller and Mundy.

Resultantly, the foreclosure of the contract as against Mundy, so far as that compact relates to the 160 acres, was properly granted, because he did not pay either taxes, principal, or interest, as required by the sale agreement. There then remains the single question as to whether or not appellant was also entitled to a foreclosure of the written undertaking against appellee Beller. If there was no contract of novation or substitution, as Beller claims, there should be a foreclosure of the original Montgomery-Pond agreement, which covers the 120 acres here involved. We do not here decide whether or not the contract, so far as it related to that portion of the real estate correctly described, could have been forfeited. Reservation of that question is made, because the point is not presented.

II. Material at this juncture is a discussion of the facts as they relate to the purported novation by the substitution of a new undertaking between appellee Beller and appellant. On this phase of the controversy, appellee Beller has the burden of proof. To meet this obligation, he produced the following evidence. Positive testimony was given by this appellee at the hearing to the effect that he and appellant expressly agreed, on or about March 3, 1926, to the succeeding propositions: First, that appellee should fully liquidate all the interest accruing up to March 1, 1926, on his portion of the said Montgomery-Pond contract, and immediately pay $1,500 on the principal thereof; second, that appellant would then make, execute, and deliver to appellee a warranty deed for the 120 acres; and third, that thereupon appellee was to make a note, payable to appellant, for the sum of $21,500, maturing five years thereafter, which evidence of indebtedness

must be secured by a first mortgage on the said 120 acres. Corroborating these statements are the equally positive assertions of the appellee Mundy to the same effect. Substantiation for the testimony of these two witnesses is afforded by the fact that, for at least six years, appellee Beller had possession of this 120 acres. He paid the taxes thereon, and satisfied the interest as it matured on that particular portion of the indebtedness. No objection to this was made by appellant at any time, but rather, he accepted the benefits thus derived from appellee's tax and interest payments, notwithstanding the fact that it amounted to a practical division of the Montgomery-Pond agreement. More than that, it is to be remembered that the conciliatory conference before mentioned was for the purpose of effecting a settlement, and if such was not accomplished, then forfeiture proceedings would be commenced. With this knowledge vividly in mind, would appellee pay $1,182.50 in interest and $1,500 on the principal on or about March 3, 1926, if he knew, when so doing, that there had been no settlement, and that a forfeiture was imminent? Certainly not, because the result thereof amounted to a willful and needless sacrifice, in such event, of $2,682.50. Many other circumstances appear which support appellees' contention.

Rebuttal of the foregoing was offered by the testimony of appellant, his son, Willard, his daughter, Mrs. Kate Moller, and his attorney, F. E. Northup. (Parenthetically, it should be noted here that appellant is a man 87 years old, and the members of his family suggest that he is forgetful, and the record of his own testimony, as disclosed by the abstract, indicates this fact. Because of Mr. Montgomery's feeble condition, business transactions were conducted for him many times by his son, Willard.) Of those witnesses, appellant and his son, Willard, asserted that the alleged novation was not consummated, that concerning the terms thereof a conclusion was never reached, and that refusal was always made to a division of the Montgomery-Pond agreement. Mrs. Kate Moller, the daughter, who was not present at the said arbitration gathering, told of the conversation which she overheard in her home between appellant and appellee Beller. Her testimony in reference to that is:

"I heard him [appellee Beller] ask my father if he wouldn't

give him five years' time. Father said 'no,' he would not, but said, 'I will give you three, provided the children are willing.'"

Moreover, Mr. Northup, appellant's attorney, while on the witness stand, gave his impressions that a final agreement was not reached in reference to the novation, at the conference aforesaid. While testifying, this witness said:

"It was never agreed, according to my best recollection, that Mr. Beller should receive a deed and give back a mortgage in any different sum."

A positive statement in this regard, however, is not made. Also, there are other incidents, facts, and circumstances which tend to explain the evidence submitted on behalf of appellant and harmonize it with the testimony presented by appellee Beller, among which is the fact that, notwithstanding appellant's statements to the contrary, he must have consented to a division of the Montgomery-Pond undertaking, because more than one of his own witnesses suggested that the negotiations proceeded to the point of debate as to whether the duration of the mortgage was to be three or five years.

Again, appellant must have agreed to a so-called "splitting" of the Montgomery-Pond agreement under certain circumstances; otherwise there would have been no need for the dispute between appellant and appellee Mundy concerning appellee Beller's obtaining the abstract for the purposes of the novation. Mundy finally agreed that Beller could have it. Part of the conversation, at least, in reference to the novation was not had in the presence of Mr. Northup, but at a time after the said conference in his office. Originally, the agreement seems to have been that appellee Beller was to pay appellant $1,000, rather than $1,500, on the principal. Nevertheless, at a subsequent meeting with Willard Montgomery, the son and agent of appellant, appellee Beller agreed to pay $1,500, and accordingly that sum was deposited in the bank for appellant, at the express consent and approval of the agent, Willard Montgomery. Appellant used this money. Afterwards, the agent, Willard Montgomery, told appellee Beller that the "jig is up," and the deal could not go through because Mundy was unable to meet his interest and taxes on the 160 acres, due to the fact that the

Marshalltown State Bank was in the hands of a receiver. Beller then said:

" 'Where do I come in? You know very well we made an agreement I was to get a deed, and your dad was to get a mortgage.' And he said [Willard Montgomery], 'Yes, I know, but my dad won't acknowledge—he won't listen to it.' I told him [the agent, Willard Montgomery]. I had made the payment of $1,500, and he just threw up his hands, and made no answer."

It seems, too, that the Montgomerys consulted Mr. Northup, their attorney, in reference to the acceptance of this $1,500,-and were told to make application of it on the general indebtedness. One more fact is significant, and that is that the forfeiture notice was not served at least until July following the March in which the arbitration conference was held. If, as appellant and his witnesses stated, the result of that meeting had but two possibilities,—the one of settlement, and the other of forfeiture,—it has not been satisfactorily explained in the record why the forfeiture proceeding was so long delayed, in view of the fact that, according to appellant's version, no settlement was reached.

Not all the matters and circumstances have been related. Further details will unduly extend this opinion. However, a careful study of the entire record constrains us to conclude, as it did the trial court, that appellee Beller, by a preponderance of the evidence, substantiated the alleged novation; and under his answer, he is entitled to have the new contract performed by appellant.

III. Yet appellant argues that, even if that be true, nevertheless there must be a reversal because the evidence offered by appellee to prove the novation is inadmissible, for the reason that it sought to change or vary the terms of the original Montgomery-Pond agreement.

Manifestly, in this appellant is wrong. Pond, it is to be remembered, makes no objection to the novation, but rather, acquiesces therein. Clearly, the idea and intention of the appellee were not to contradict the writing, but rather, to sustain it, by showing a performance thereof, —or, in other words, a novation. That is permissible. *Griffey v. Lubben*, 196 Iowa 465; *Walker v. Camp*, 63 Iowa 627; *Guthrie Ice Co. v. Selby*, 166 Iowa 474; *Goodman*

*Mfg. Co. v. Mammoth Vein Coal Co.*, 185 Iowa 253; *Price & Teeple Piano Co. v. Sheenan*, 150 Iowa 189; *Fleming Bros. v. Linder* (Iowa), 109 N. W. 771 (not officially reported); 22 Corpus Juris 1273, Section 1692. See, also, *Bond v. O'Donnell*, 205 Iowa 902. Apt language contained in *Griffey v. Lubben*, supra, on page 468 is:

"This is only another manner of stating the fundamental proposition that, so long as any contract, written or oral, remains executory, it is an essential attribute of the right of persons to do what they will with their own (so long as their acts do not prejudice the rights of others); that the parties thereto may, by mutual consent, change, alter, or amend its terms, or may abandon it altogether; and that, such agreement once made, it affords a complete defense by either to any assertion by the other of any right based upon the original unperformed contract. It makes little difference whether a defense of this character be classed as waiver or estoppel, or be given any other technical label, it operates, when pleaded and proved, to relieve from liability the party sought to be charged upon the alleged contract."

Likewise, *Goodman Mfg. Co. v. Mammoth Vein Coal Co.*, supra, consistently states:

"The appellant contends that the parol evidence of the agreement was incompetent, for that it tended to vary the terms of a written instrument. It does not have that effect. It merely tended to prove a subsequent independent agreement."

IV. Complaint is further interposed by appellant to the sufficiency of the novation. Incomplete establishment thereof is urged, because there was no consideration to support it. The appellant's theory at this juncture is that Beller was already obligated to discharge the Montgomery-Pond undertaking, and therefore his agreement to pay, and the actual payment of $1,500 after that indebtedness was due, amounted to no more than a part performance of a legal duty. Obviously, this position is untenable. Primarily, this is so because appellee Beller never agreed to satisfy the Montgomery-Pond compact. Assignment thereof was not made to Beller, but rather, he obtained whatever equities

he received through an independent agreement. While it is true that his interests therein were subject to the said Montgomery-Pond agreement, yet appellee did not assume or undertake to perform that instrument. Therefore, it cannot be said that, in the payment of the $1,500, he was only doing that which he was previously bound to do. Consideration was furnished when appellant consented to divide the so-called Montgomery-Pond undertaking, and deed the 120 acres to appellee, when the latter, in turn, obligated himself to pay the delinquent interest, advance the $1,500 in cash on the principal, bind himself by the execution of the $21,500 note, and permit the land to be security therefor. This involved the consent of Pond and his grantees, and their relinquishment of the contractual rights under the old Montgomery-Pond agreement through the various assignments and subagreements, as related in the preliminary facts above. A promise may be a consideration for another promise, and the surrender of a right or agreement by a third person may support a contract between two others. So, too, the cancellation of one "contract or agreement" may supply consideration for entering into a new one. *Wickham & Burton Coal Co. v. Farmers Lbr. Co.*, 189 Iowa 1183; *Commercial Nat. Bank v. May*, 187 Iowa 888; *City of Ft. Madison v. Moore*, 109 Iowa 476; *Strahn v. Johnson*, 197 Iowa 1324; *LeGrand Quarry Co. v. Reichard*, 40 Iowa 161. We assume, without deciding, that the contract of novation is not unprovable by parol evidence, because of the statute of frauds. That issue was not presented, and therefore not discussed.

Accordingly, the judgment and decree of the district court should be, and hereby is, affirmed; and if appellee Beller shall pay to the appellant all interest due under the terms of the $21,500 note, and in addition thereto shall deliver to the latter the said note and mortgage tendered and offered in evidence at the trial below, then the appellant shall properly execute and deliver to the said appellee the warranty deed of himself and wife, with the ordinary form of warranty and covenant, conveying to the latter the said 120 acres. Payment of said interest and the delivery of the note and mortgage, as well as the deed, shall be made forthwith, and, if appellant fails to execute and deliver said deed within ten days after the filing of a procedendo from the clerk of this court with the clerk of the district court of

Marshall County, the said clerk of the district court is hereby appointed as a special commissioner to execute the deed for said real estate on behalf of appellant and his wife, and make delivery thereof to the appellee Beller. Such deed, if and when thus executed by the clerk, shall be presented to the said district court for approval and delivery to said appellee.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.