OLE A. OLSEN, Appellant, v. M. O. SORTEDAHL, Appellee.

**Real property:** EXCHANGE: INCUMBRANCE: BREACH OF CONTRACT.
1 Plaintiff and defendant entered into a contract of exchange of properties, in which it was agreed that defendant should assume certain incumbrances in stated amounts against each of the properties to be conveyed to him, but the nature of the same was not stated in the contract; he knew however that the incumbrance against one of the properties consisted of a mortgage, a judgment and unpaid taxes, but contended in his answer that it was orally represented by plaintiff that the same was in the form of mortgages. *Held,* that defendant's contention for a breach of the contract by reason of the judgment was not sustained, and that it was immaterial that the same was a lien on more than one of the properties.

**Same:** PAYMENT OF INTEREST ON INCUMBRANCES. Under a contract for the exchange of property made in May, 1905, providing that plaintiff should pay interest annually on certain indebtedness the first of November each year, he was not required to make such payment within a year from the date of his contract, but his first payment was due November, 1906.

**Same:** RESCISSION OF CONTRACT: ELECTION. Where one party to a contract for exchange of properties failed to perform, and declared a rescission in which the other acquiesced by his silence, such other party was entitled either to enforcement or rescission as he might elect.

*Appeal from Worth District Court.*—HON. CLIFFORD P. SMITH, Judge.

SATURDAY, JUNE 5, 1909.

THE facts are stated in the opinion.—*Reversed* and *remanded.*

*Thompson & Sabin,* for appellant.

*Blythe, Markley, Rule & Smith,* for appellee.

EVANS, C. J.—At the time of the transactions hereinafter set forth, the defendant was a land agent residing in Minnesota, and the plaintiff was a resident of Northwood, Iowa, and was engaged in the miscellaneous business of house moving, well digging and operating a threshing machine. On May 27, 1905, the parties entered into the following contract:

This agreement, made and entered into this 27th day of May, 1905, by and between M. O. Sortedahl, of Red Lake County, Minnesota, party of the first part, and Ole A. Olsen, of Worth County, Iowa, party of the second part, witnesseth:

That if the party of the second part shall first make the payments and perform the covenants hereinafter men-

tioned on his part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure the said party of the second part, in fee simple, clear of all incumbrances whatsoever, except as hereinafter specified, by a good and sufficient warranty deed, the lots, pieces and parcels of ground, situated in the county of Red Lake and state of Minnesota, known and described as the west half of the west half (W. $\frac{1}{2}$ of W. $\frac{1}{2}$) of section twenty-six (26), the east half of the east half (E. $\frac{1}{2}$ of E. $\frac{1}{2}$) and the southwest quarter of the southeast quarter (S. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$) of section twenty-seven (27), and the north half of the north half (N. $\frac{1}{2}$ of N. $\frac{1}{2}$) of section thirty-four (34) all in township one hundred fifty-one (151) north of range forty-three (43) west of the Fifth P. M., Minnesota, containing five hundred and twenty acres (520) more or less according to the government survey thereof.

And the said party of the second part hereby covenants and agrees to assume the payment of a mortgage incumbrance of five thousand dollars ($5,000) to be placed upon said premises by party of the first part, as the same becomes due unless the same is extended as hereinafter stipulated, and if said mortgage should be extended then said second party agrees to pay the same according to the terms of the extension, said mortgage to be placed upon said premises by party of the first part at his convenience and at his own expense, and the same is to be made for a term of not to exceed ten years and at a rate of interest not to exceed six percent per annum and until said five thousand dollar incumbrance is placed upon said premises by first party said second party agrees to pay said first party interest on said sum of five thousand dollars at the rate of five percent per annum, same to be payable with interest due November 1, 1906. And in addition to assuming the payment of the five thousand dollar incumbrance, the said party of the second part hereby also covenants and agrees to pay the said party of the first part the sum of five thousand four hundred dollars payable at the Bank of Red Lake Falls, Minnesota, in the manner following: The sum of $500 on or before the first day of December, 1907; the sum of $500 on or before the first

day of December, 1908; the sum of $500 on or before the first day of December, 1909; the sum of $500 on or before the first day of December, 1910; the sum of $500 on or before the first day of December, 1911; the sum of $500 on or before the first day of December, 1912; the sum of $500 on or before the first day of December, 1913; the sum of $900 on or before the first day of December, 1914; the sum of $1000 on or before the first day of December, 1915—with interest on said last-mentioned amounts (aggregating $5,400) at the rate of five percent per annum, payable annually on the first day of November of each year, on the whole sum remaining from time to time unpaid, and to pay all taxes, assessments or impositions that may be legally levied or imposed upon said land subsequent to the taxes for the year 1904, and in case of the failure of said party of the second part to make either of the payments or interest thereon or any part thereof, or to perform any of the covenants on his part hereby made and entered into, then the whole of the said payments and interest shall at the election of said party of first part become immediately due and payable and this contract shall at the option of the party of the first part be forfeited and determined by giving to said second party thirty days' notice in writing of the intention of said party to cancel and determine this contract, setting forth in said notice the amount due upon said contract with the time and place when and where payment can be made by said party.

It is mutually understood and agreed by and between the parties to this contract that thirty days is a reasonable and sufficient notice to be so given to said second party in case of failure to perform any of the covenants on his part thereby made and entered into, and shall be sufficient to cancel all obligations hereunder on the part of the said first party and fully reinvest him with all right, title and interest hereby agreed to be conveyed, and the party of the second part shall forfeit all payments made by him on this contract and all his right, title and interest in all buildings, fences or other improvements whatsoever, and such payments and improvements shall be retained by said party of the first part in full satisfaction and in liquidation of all damages by him sustained, and he shall

have the right to re-enter and take possession of the premises aforesaid. It is hereby further stipulated that in case of a total crop failure during any year party of the second part shall not be obliged to pay the part of the principal due said year when the same is due, but shall have an extension of the payment of same until December 1st the next succeeding year. Party of the first part shall have until the 13th of June in which to inspect the property of the second party hereinbefore specified, and hereby contracted to be conveyed by second party to first party, and said first party, if not satisfied with said property, shall have the right to declare this contract cancelled.

Both parties hereto shall have to furnish unto the other party at the time they deed unto each other their respective properties above named abstracts of title showing their properties clear of all incumbrances except such as are herein stipulated to be assumed by the respective parties, and in case any objection should be raised by either party to the title the party owning such property shall have such time as may be necessary to make the title marketable and satisfactory to the party raising any question as to same if such a case should happen. Party of the first part agrees to give the party of the second part in the deal with the premises above described the following described personal property, to wit: three cows, ten calves, one binder, one cream separator and two pigs. And party of the second part is to take the land subject to rental contract for the year 1905 and is to get half of the crop by paying half of the threshing machine bill and half of the twine bill.

And as and for a further consideration for the purchase of the premises hereinbefore described the party of the second part covenants and agrees to convey to said party of the first part by a good and sufficient warranty deed, free of all incumbrance, except as hereinafter specified, the following described lots, pieces, or parcels of land situated in the county of Worth and state of Iowa, to wit: The hotel property, known as the Northwood Hotel, being lot and building purchased by second party from J. J. Sannon, together with all the buildings and appurtenances thereunto belonging and all the furniture and household goods now used by said second party in running and con-

ducting said hotel business.  Also the following described residence property, to wit:  Being property purchased by said second party from G. H. Whitcomb, containing one and three-fourths acres of ground, together with the seven-room residence and barn thereupon located.  And as a further consideration for said purchase said party of the second part agrees to convey unto first party a complete J. I. Case threshing machine outfit, consisting of a 15 H. P. engine used thirty days with tender, a 36-58 separator, used about 90 days, with self-feeder, sacker, weigher, stacker and shredder used one year and a complete line of all tools necessary for the operation and running of said threshing outfit, also wagon and water tank.  There is an incumbrance of $800 against the hotel property, $600 against the residence property, and $885 against the threshing outfit, which said first party assumes.

It is mutually agreed by and between the parties hereto that the time of payment shall be an essential part of this contract, and that all of the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

In testimony whereof, both parties have hereunto set their hands and seals the day and year hereinbefore written.

M. O. Sortedahl.<br>
Ole A. Olsen.

Duly acknowledged.

### Exhibit B.

Party of the first part shall have the right and privilege to withdraw from the sale herein contracted to be made the N. ½ of the N. ½ of section 34, township 151, range 43, and in case of the withdrawal of the same a discount of $25 per acre shall be allowed from the purchase price hereinbefore mentioned, such discount amounting in all to the sum of $4,000.00.  Such privilege of withdrawal shall not deprive the second party of his right to take possession of said premises for the purposes of farming same; and in case said first party shall decide to withdraw same after the second party shall have put in crop for the year 1906 then second party shall be en-

titled to crop said land during said year paying the first
party one-fourth of the crop raised upon said land during
said year. In case of withdrawal of said land during the
year 1906, said second party shall not pay interest on
said amount of $4,000.00 nor taxes on said land, during
said year. Party of the second part agrees to rent said
hotel property herein mentioned from the date of this con-
tract until September 1, 1905, at a rental of $25.00 per
month and during such rental period to take good care
of said property, the furniture and household goods as if
they should be his own.

Ole A. Olsen.

M. O. Sortedahl.

At the same time the plaintiff executed and delivered
to the defendant promissory notes for the installments pro-
vided for in the contract. About a month later the plain-
tiff executed to the defendant deeds of his real estate, and
a bill of sale of the personal property, which the defend-
ant caused to be placed of record. After this substan-
tially nothing was done by either party in pursuance of
the contract. A lengthy correspondence was carried on,
which is incorporated in this record, and which covers up-
wards of a hundred printed pages. The larger part of
this volume consists of the letters of the defendant, which
are models of indirection. It appears that, shortly after
the conveyance by plaintiff to defendant, one Butler
brought an action against the defendant for an alleged
agent's commission. The defendant contested the suit and
desired to hold the contract between him and plaintiff in
suspense until such suit could be disposed of. Butler was
originally the agent for the plaintiff, in that the plaintiff
had listed with him his property for sale; but, before this
transaction was entered into, the defendant and Butler
deemed it proper that the defendant should employ Butler
as his agent for the same transaction. The defendant tes-
tified upon the trial that the Minnesota land was worth
only $20 per acre, which was the amount he was receiv-

ing therefor from the plaintiff in addition to the property conveyed to him by the plaintiff. This circumstance doubtless explains much of the inconsistency in the defendant's letters, and the inconsistency between his letters and his real purpose, as he testified to it upon the trial. This inconsistency is well illustrated by the following colloquy between the defendant and the trial court:

The court: Then your real reason in neither rescinding and turning back the contract, as was suggested by Mr. Olsen in his letters in March and April, 1906—your real reason for not either closing up or rescinding at that time was that you wanted to wait until the Butler litigation was settled? A. That was it, your honor. The Court: Your purpose and your motives that were actuating you at that time was not any objection to his property —I mean to Olsen's title—but it was the desire to have the Butler litigation settled before you did anything, is that it? A. Well to some extent, your honor. I figured that we could get the Olsen matter settled some way. The Court: I want to understand why it was you did neither thing when Olsen offered to do either. Olsen wrote to you and said, 'I want to close up with my title as it is or else I want to rescind.' You didn't do either, but wrote back to him and said something about the Butler suit? A. I really felt that I would rather have the deal go through, but thought by hanging off a little that we could get that matter with Butler settled better, because I felt that, as long as he hadn't done what he agreed to do to help Olsen fix up, he was not entitled to commission and that was the reason, my object. I didn't like to throw the deal up, and I didn't like to call it closed for fear then Butler could come and say, 'Here, the deal is closed.' I wanted the whole deal to be hanging. I didn't want to commit myself. I can't explain why I did not answer Olsen's letter of April 11th sooner. I told Olsen in January, 1907, that I would close the deal and take the title as it was. This statement was made after the Minnesota action was started and pending, and after the first notice was served in this action. After that they served another notice on me.

The plaintiff brought his action in two counts. He claims that the defendant repudiated the contract, and that he is entitled to recover either the full value of the Minnesota land, under the first count, or, under the second count, the value of the property conveyed by him. Many of the letters written by the defendant claimed a right on his part to declare the "deal off" for alleged default on the part of plaintiff. Some of them contained a request or suggestion that the "deal" be considered "off," and a new deal be entered into later after disposing of the Butler suit; and one of his letters declared that he would "throw up the deal." These claims and suggestions of the defendant appear to have been acquiesced in by the plaintiff without special protest until April 11, 1906. On that date he wrote a letter to the defendant insisting, in substance, upon a termination of all suspense and uncertainty and demanding that the defendant either waive his objections or return to the plaintiff his property. To this letter the defendant seems to have paid little, if any, attention. Under the contract between the parties, the defendant assumed an incumbrance of $800 against the hotel property and $600 against the residence property, and $885 against the threshing machine outfit. The incumbrance against the residence property consisted, in fact, of a $200 mortgage and a $345 judgment and some taxes, as the defendant well knew. The defendant based his claim of default against the plaintiff in that the $345 judgment was not only a lien against the residence property, but was necessarily a lien against the hotel property also.

1. REAL PROPERTY: exchange: incumbrance: breach of contract.

The trial court made certain findings of fact in which it sustained the defendant's contention in this respect. It found, also, that the plaintiff was in default in having failed to pay the interest due on the Minnesota mortgage November 1, 1905. It found that these defaults on the part of the plaintiff antedated any default on the part of the defendant. It also found that the defendant had always main-

tained the contract in full force and effect, and that it was now in full force and effect, and it entered judgment for the defendant on his counterclaim against the plaintiff for rents of the real property and use of the threshing machine which he had conveyed to the defendant. The thought of the trial court seemed to be that, inasmuch as the $345 judgment was an incumbrance upon both pieces of real estate, the defendant was not called upon to perform until the plaintiff had confined such lien to the residence property. It will be noted that the contract provides that the defendant was to assume these incumbrances. This means that he was to pay them when due. The judgment of $345 was due when he assumed its payment, and we see no materiality therefore in the fact that it was as a matter of law a lien upon both properties. Such fact added nothing to the burden of his indebtedness. If he had paid it, as he agreed to do, the lien thereof would be discharged as effectually against one property as against the other. The claim of the defendant is that this judgment should have been reduced to a mortgage on the residence property, but the written contract did not so provide. In paragraphs 3 and 5 of division 2 of his answer, he alleges: "That said incumbrance was orally represented to the defendant to be in the form of mortgages upon said property; that plaintiff failed to furnish abstracts until about September, '05, and plaintiff's abstract show that there was a judgment amounting to the sum of about $345, which was a lien upon both properties, which judgment lien was not known to the defendant and was not contemplated by the parties to be assumed by this defendant." In no other way does the defendant claim a breach of the contract by the plaintiff at this point. As against these allegations of his answer, we may put his evidence as a witness on the trial: "When Butler and Olsen first came, they said there was $600 against one property and $800 against the other. Afterwards, and

before the contract, they explained that the incumbrance on the house was $400 judgment and taxes, and a $200 mortgage." On cross-examination he testified: "I knew there was a judgment against Olsen's property before we signed the contract, and that the incumbrance on the house, including judgment and tax, was $600."

It is manifest from the foregoing that the only allegations made by the defendant in his pleading on this subject are contradicted by his testimony. The trial court therefore erred in finding any breach against the plaintiff by reason of the $345 judgment.

The trial court further found a breach of the contract by the plaintiff in that he had failed to pay the interest due on the Minnesota land mortgage November 1,

2. SAME: payment of interest on incumbrances.

1905. The provision of the contract was that the plaintiff should pay the interest annually on the 1st day of November of each year. It is manifest therefore that he could not be required to pay interest within one year from the date of his contract nor before November 1st of any year. No interest would therefore be due from him earlier than November 1, 1906. The defendant in his answer does not claim that any interest was due from him prior to such date, while the plaintiff claims that no interest would be due from him until November 1, 1907. The trial court therefore erred at this point also.

II. It seems to us from this record that the plaintiff was entitled to rescind this contract or to treat it as rescinded and to recover back the property delivered by

3. SAME: rescission of contract: election.

him, or its value if converted. There is confusion in this record as to whether the plaintiff is attempting to rescind or enforce the contract. He can not do both. The defendant himself seems to have declared a rescission in his letter of February 3, 1906, and the plaintiff seems to have acquiesced in it by silence. On April 11, 1906, he demanded a

reconveyance of his property, which he had a right to do on the theory of a rescission. What was done later does not clearly appear from this record.

The case will be remanded back to the trial court for such further proceedings consistent herewith as shall seem to it proper. Such court will have power to permit a retrial, or to permit additional evidence or pleadings. If it should be necessary to transfer the case to the equity side, in order to attain justice between the parties, the trial court will have power in that respect.

For the errors pointed out, the judgment below must be reversed, and the case *remanded.*