JOHN W. WRIGHT, Appellee, v. JACOB SWIGART, Appellant.

**VENDOR AND PURCHASER:** Contract of Sale—Rescission—Evidence—Insufficiency. Evidence reviewed, and *held* insufficient to support vendee's claim that vendor had repudiated the contract.

**VENDOR AND PURCHASER:** Performance of Contract—Mutual Failure to Demand—Effect. The failure of both parties to demand or tender performance works an extension of the life of the contract, even where time is of the essence of the contract.

**VENDOR AND PURCHASER:** Rescission—Mutual Rescission—Restoring the Status Quo. A mutual abandonment and rescission of a contract of sale gives each party to the contract the right to be placed *in statu quo,* in accordance with the fair contemplation of the contract.

PRINCIPLE APPLIED: In the contract for the sale of a farm, the vendee was given the right to go upon the farm, prior to the performance of the contract, and do fall plowing. He did so. He also negotiated a loan, in order to carry out his contract. The parties mutually rescinded the contract. *Held,* defendant (vendor) was liable for the value of the plowing, but not for the expense attending the proposed loan, the latter expense not being one contemplated by the contract.

*Appeal from Hamilton District Court.*—HON. CHARLES E. ALBROOK, Judge.

SATURDAY, NOVEMBER 27, 1915.

ACTION to recover damages for breach of contract to sell land. There was a verdict for the plaintiff for a part of his claim. The defendant has appealed.—*Affirmed on condition.*

*D. C. Chase,* for appellee.

*Wesley Martin,* for appellant.

EVANS, J.—The parties hereto entered into a land contract on June 10, 1912, whereby the defendant agreed to sell and the plaintiff to buy a certain farm of 120 acres in Hamilton County, at an agreed price of $135 per acre. $500 was paid by plaintiff at the time of the execution of the contract. Performance of the contract was to be had on March 1, 1913, and possession was to be given at such time. The plaintiff, however, had the privilege of entering upon the farm for the purpose of plowing in the fall of 1912. The contract included the following provisions:

"Second party can pay $1,170 cash on March 1, 1913, and give second mortgage for balance of $4,000 for 10 years at 5% interest from March 1, 1913, or give first mortgage for $7,500 for 10 years with interest at 5% from March 1, 1913, and 1% commission, payable annually till all is paid. And the party of the second part shall also annually pay all taxes and assessments that may accrue on said property as they become due, or before they become delinquent, and including the tax for the year 1913. . . . But if such sums of money, interest and taxes are paid as aforesaid, promptly at the time aforesaid, the party of the first part will, on receiving said money and interest, execute and deliver, at his own cost and expense, a warranty deed of said premises, as above agreed, and abstract showing perfect title, clear of any incumbrance."

Time of payment was made of the essence of the contract. Plaintiff's action is predicated upon the claim that, on February 28th, the defendant abandoned the contract by repudiation thereof. On such date, the plaintiff informed the defendant that the abstract was not satisfactory, in that it was old and worn and difficult to read, and in that it had not been brought down to date. The defendant, Swigart, held the land under contract of purchase from one Smith. He himself was to obtain title from Smith on the 1st of March.

1. VENDOR AND PURCHASER: contract of sale: rescission: evidence: insufficiency.

The plaintiff had obtained such abstract from Smith about the middle of February. He claims to have so obtained it at the direction of the defendant. He claimed also to have told the defendant two or three times that the abstract was not satisfactory. He did not, however, return the abstract to the defendant, nor had he done so on the 28th of February. There was no real defect in the title to the land. The abstract itself, as described, was incomplete. The plaintiff, however, had himself obtained a new abstract from abstracter Crosley, pursuant to negotiations for making a loan, and he was not confronted with any real difficulty, so far as the form of the abstract was concerned.

The plaintiff's testimony, tending to show repudiation by defendant on February 28th, was as follows:

"I had a conversation with Mr. Swigart, sometime after I was on this land in February, in regard to this abstract." Q. "What did he say to you in regard to your taking this land or not taking it on the abstract that he had given you?" A. "I either had to take the papers, the abstract, as it was there, or get off the place." Q. "Did he, at that time, offer to fix this abstract up—was there anything said about that at that time?" A. "No, sir, I don't think so." Q. "Was there anybody present at that time, during the conversation, in which he said that you could take this abstract or get off the place?" A. "Yes, sir; my brother was present. I got off after that."

Elva Wright, brother of plaintiff, testified as follows:

"I recall hearing a conversation between him and Mr. Swigart, the defendant here, on this farm, some time in February, 1913. Mr. Swigart wanted to close the deal, and my brother told him he would not with that kind of a title. He told him if he wouldn't, to get off the place. That was near the latter part of February, I think. . . ." Q. "You just repeat that conversation; tell us what Swigart said, then what

your brother said.'' A. ''He asked him if he would settle for the place. My brother told him 'no', not then without he had a different abstract; that was no good, he told him—he said that Covil said that. No particular abstract was referred to. The papers on the place—Swigart told him that if he did not settle by the 1st day of March to get off the place. That is all I remember hearing.'' Q. ''Did your brother say that he was ready to go ahead with the deal?'' A. ''If he could get the papers.'' Q. ''What papers did he want?'' A. ''The abstract.''

The foregoing is the testimony, denied by defendant, upon which the claim of repudiation on February 28th is based. We think it clear that such testimony is too light and indefinite to support the claim of repudiation; and were it not for other evidence of subsequent abandonment by the defendant, we should deem it necessary to hold that the plaintiff was not entitled to recover. It is undisputed, however, that the parties did not meet on March 1st. The plaintiff moved off the place (he moved on about February 1st, with the consent of the defendant) and the defendant took possession. The contract did not specify the place of performance. Neither party ever tendered performance to the other at any time or place. The failure of both parties to tender performance on March 1st saved the default of each and kept the contract alive beyond the date of performance fixed therein. *Waters v. Pearson,* 163 Iowa 391.

2. VENDOR AND PURCHASER: performance of contract: mutual failure to demand: effect.

Either party could have put the other in default by a tender. Instead of doing so, each went his way and ignored the contract. The defendant served no notice of forfeiture upon the plaintiff. By the undisputed testimony, therefore, it is made to appear that there was a mutual abandonment of the contract, and this amounted to a mutual rescission. In that sense, the defendant did abandon the contract. This was the ultimate question, so far as the plaintiff's right

3. VENDOR AND PURCHASER: rescission: mutual rescission: restoring the status quo.

of recovery of the $500 paid by him upon the contract is concerned. But the plaintiff sued for four items of damage, viz: $500 paid by him on the contract; $60 paid by him for fall plowing; $137.50 alleged commission paid by him for procuring a loan; and $2,000 alleged profit in the contract. The jury allowed him his first three items and denied the fourth. The defendant also counterclaimed for damages based upon claim of waste committed upon the premises, and this claim was rejected by the jury.

In view of the mutual abandonment, each party was entitled to be put *in statu quo* as far as possible. This necessarily included the return to plaintiff of the $500 paid. We think he was, for the same reason, entitled to the $60 paid for plowing. This was contemplated by the contract, and the expense was incurred pursuant thereto. Not only so, but its benefit accrued to the defendant as the party holding the land.

The more difficult question is as to whether, under the circumstances, plaintiff could properly recover the item of $137.50. It was not an expense contemplated by the contract, nor did it operate in any way to the benefit of the defendant. Its recovery by plaintiff was not a restoration of the *status quo*. While it saved plaintiff from loss, it imposed the loss upon the defendant. On the question of the breach and abandonment of the contract, the parties stand on an equality, and there is no legal reason why this loss should be transferred to the defendant. Whether it would have been a proper item if the plaintiff had been free from default, we need not consider. If the plaintiff shall elect to remit from his recovery the item of $137.50 and to take an affirmance for the balance of his judgment, the judgment below will be conditionally affirmed; otherwise it must be reversed; plaintiff's notice of election, if any, to be filed within 60 days of the filing of this opinion.—*Affirmed on condition.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.