T. H. CROOKE, Appellant, v. M. C. NELSON, Appellee.

**SPECIFIC PERFORMANCE: Nature of Remedy—Plaintiff in Default.**
1   A vendor who has wholly failed to comply with his contract may not have specific performance.

VENDOR AND PURCHASER: Construction of Contract—Time For
2 Furnishing Abstract. A vendor's agreement to furnish vendee an
abstract of title on a date one month prior to the actual closing
of the deal, may show that it was not thereby intended to waive
the certification of the abstract *on the day fixed for the transfer of
title.*

VENDOR AND PURCHASER: Performance of Contract. A vendor
3 who has failed to comply with his contract of sale may not demand
that the vendee compromise, and accept a conveyance on other
.and substituted terms.

VENDOR AND PURCHASER: Performance of Contract—Excuse For
4 Default. A purchaser is not in default for failure to make a pay-
ment at the time provided by contract, when the vendor at said
time is in default on precedently required matters.

*Appeal from ·Dickinson District Court.*—N. J. LEE, Judge.

DECEMBER 15, 1922.

REHEARING DENIED APRIL 3, 1923.

ACTION in equity, for the specific performance of a contract
for the sale of real estate. There was a decree in the court below,
dismissing plaintiff's petition and ordering judgment against
him for the portion .of the purchase price paid him by the de-
fendant. The facts appear in the opinion.—*Affirmed.*

*E. A. Wissler, Francis & Owen,* and *B. I. Salinger,* for
appellant.

*H. E. Narey* and *Heald, Cook & Heald,* for appellee.

STEVENS, C. J.—I. This is an action in equity by the ven-
dor, to compel the specific performance of a contract by the
vendee for the sale of 400 acres of land in Dickinson County,
with a cross-petition or counterclaim by the latter for $5,000,
the amount paid on the purchase price at the time of the execu-
tion of the contract. The $5,000 was paid as follows: $3,000
cash, and a note for $2,000, due March 1, 1921, without interest.
The contract in question was executed ·April 20, 1920, and fixed
March 1, 1921, as the date for the consummation of the sale.
The consideration expressed therein is $54,000, to be paid as

follows: $5,000 upon the execution of the contract, receipt of which is acknowledged; $10,000 March 1, 1921; the vendee to assume two mortgages,—a first mortgage for $18,000, due March 1, 1926, and a second mortgage for $19,000, due March 1, 1924,— and to execute to vendor a mortgage for $2,000, due March 1, 1924.

It appears without conflict in the evidence that the $18,000 mortgage referred to in fact became due on March 1, 1922, instead of 1926, as recited in the contract, and that the $19,000 mortgage became due on March 1, 1925, instead of 1924. The contract was not performed or consummated on March 1, 1921; and in April of the same year, plaintiff brought this action. He alleged in his petition that the recitals in the contract that the $18,000 mortgage matured March 1, 1926, and the $19,000 mortgage March 1, 1924, were due to the mutual mistake of the parties, and asked that the contract be reformed so as to express the true dates and the real intention of the parties.

The defendant, for answer, denied the alleged mutual mistake, and alleged that plaintiff himself defaulted on March 1, 1921, and failed and refused to comply with the terms of the contract to be performed by him. The defendant also alleged that on that date he was willing and able to perform the contract on his part. Other matters pleaded by the defendant will be referred to later. Plaintiff, in reply, charges that the defendant has wholly failed and refused to comply with the contract and to pay the purchase price, as agreed.

The contract contained a provision making time of the payments to be made by appellee of the essence of the contract, and also contained a forfeiture clause. No reference is made to these provisions of the contract in any of the pleadings filed by appellant.

The alleged default of appellant is based upon his failure to comply with the contract in the following particulars: (1) To furnish appellee an abstract showing a good, merchantable title on March 1, 1921; (2) to pay the taxes on said premises for the year 1920; and (3) to convey the same to appellee subject only to two mortgages,—a first mortgage for $18,000, due March 1, 1926, and a second mortgage for $19,000, due March 1, 1924.

It is conceded by appellant that the taxes for 1920 were paid September 22, 1921; that the maturity of the mortgages upon the land March 1, 1921, was as follows: the $18,000 mortgage March 1, 1922, and the $19,000 mortgage March 1, 1925; and that the only abstract furnished was one in the possession of a third party in July, 1920.

The court below found that appellant was not entitled to have the contract reformed. Evidence was introduced on both sides upon the issue of reformation, plaintiff testifying that he at no time agreed to convey the land subject to an $18,000 mortgage due March 1, 1926; that he knew and informed appellee at the time that the mortgage became due in 1921 or 1922. The overwhelming weight of the evidence, however, is to the effect that appellant stated that he would secure a renewal or extension of the $18,000 mortgage, and that the due date written in the contract by the scrivener was in accordance with the time fixed by the parties, who are, of course, bound by the terms of the contract as written, unless appellant is entitled to have it reformed. The $18,000 first mortgage was owned by a nonresident of the state, but the record does not show definitely by whom it was executed. The $19,000 second mortgage was executed by appellant's grantor, one Smith, to Josephine Watson, of whom he purchased the land. The contract between Smith and Mrs. Watson provided that she would temporarily release the $19,000 mortgage when the first mortgage became due, so as to permit a renewal or extension thereof without interfering with its priority.

It is conceded by appellant that he had neither placed a new mortgage upon the premises for $18,000 to mature March 1, 1926, nor secured an extension of the old mortgage to that date. At the conclusion of all the evidence, appellant offered, if the court found that he was not entitled to a reformation of the contract, to comply with its terms as declared by the court, within a reasonable time, and to convey the same to appellee; at the same time tendering a warranty deed and offering to place the necessary revenue stamps thereon.

A mere recital of the facts is sufficient to show that appellant wholly failed to comply with the contract upon his part,

and that his default continued up to the time of the trial. It

1. SPECIFIC
PERFORMANCE:
nature of
remedy:
plaintiff in
default.

is idle for appellant to contend, under the record before us, that the provision of the contract that he will "execute and deliver at his own cost and expense a warranty deed of said premises as above agreed, and also an abstract of title showing a good and merchantable title, and that same will be furnished Nelson for examination on or before February 1, 1921," was waived by appellee by his consent to a different arrangement. The record contains no evidence of consent or waiver.

We gather from the record that one of the mortgagees, presumably Mrs. Watson, held an abstract of title to the land, and that it was turned over to an abstracter in Spirit Lake some time in June, and in July was brought down to date, examined, and an opinion therein furnished appellee by an attorney connected with the abstract company. The opinion was furnished at the suggestion of a third party, which suggestion was merely acquiesced in by appellee. Appellee testified that the opinion furnished him was in his possession, but it was not produced upon the trial. Later, and long prior to March 1, 1921, the abstract was forwarded to Mrs. Watson, and, so far as the record disclosed, was in her possession at the time of the trial. The provision of the contract requiring appellant to furnish an abstract to appellee on or before February 1, 1921, was for the

2. VENDOR AND
PURCHASER:
construction of
contract: time
for furnishing
abstract.

purpose of enabling him to have it examined by an attorney, and to have any defects found therein corrected by the time fixed for the consummation of the contract. It was not intended to waive the certification of the abstract on the date fixed for the transfer of title. The foregoing attempt of appellant to comply with this provision of the contract was wholly insufficient. Appellee was clearly entitled to an abstract showing the state of the title March 1, 1921. *Martin v. Roberts,* 127 Iowa 218; *Fagan v. Hook,* 134 Iowa 381.

It is apparent from what has already been said that, had the abstract been certified to March 1st, it would at least have shown the nonpayment of the taxes for 1920. Appellee was entitled to have the land conveyed to him subject only to the in-

cumbrances recited in the contract, and the time of maturity was important. *Goettsch v. Weseman*, 185 Iowa 1213; *Nelson v. Chingren*, 132 Iowa 383; *Primm v. Wise & Stern*, 126 Iowa 528; *Walters v. Miller*, 10 Iowa 427; *Webb v. Hancher*, 127 Iowa 269; *Wilhelm v. Fimple*, 31 Iowa 131.

The second mortgage was executed by appellant's grantor to Mrs. Watson. There is nothing in the record to show that she was ready or willing to temporarily release the second mortgage, so as to enable appellant to secure an extension of the first mortgage or a new loan maturing March 1, 1926, on said premises.

Prior to March 1, 1921, appellant offered to pay appellee the difference, if any, in the rate of interest he might be required to pay for an extension or renewal of the first mortgage. Appellee was not bound to settle the controversy by a compromise of the terms of the contract, or to accept a conveyance upon any other terms than those expressed therein. The second mortgage provided for optional payments, and appellee was not prejudiced by the fact that it matured in 1925, instead of in 1924.

3. VENDOR AND PURCHASER: performance of contract.

Enough has been said to show that appellant was not entitled to a decree reforming the contract, or of specific performance by its terms.

II. The court, in addition to dismissing plaintiff's petition, gave defendant a judgment against him for $5,000, the amount paid upon the purchase price at the time the contract was executed, providing, however, that a credit of $2,000 be allowed thereon, upon the surrender of the note executed to appellant as a part of the transaction. Shortly after this action was commenced, appellee caused a written notice of rescission, based upon appellant's failure to comply with the contract in the particulars already mentioned, to be served upon appellant. Appellant asserts that time was of the essence of the contract, and that, by failing and refusing to make the $10,000 cash payment and to execute the $2,000 mortgage to appellant on March 1, 1921, appellee is in default, and not entitled to judgment against appellant.

4. VENDOR AND PURCHASER: performance of contract: excuse for default.

It is further contended by appellant that appellee leased

the premises to a third party, and did not offer to restore posses-
sion to him or to place him *in statu quo.*

Appellee admits that he did not pay the $10,000, make the
payment, nor execute a mortgage to appellant for $2,000 on
March 1, 1921, due in three years from that date, as required
by the contract. He offers as an excuse for his failure to do so
the alleged default of appellant. The obligation of the parties to
comply with the terms of the contract was mutual, and this duty
was unaffected by the provision in the contract making the time
of payment and performance by the vendee of the essence of the
contract. If appellant was unable or refused to comply with
the contract on March 1, 1921, appellee was not required to
make the payment or to execute the mortgage. *Goettsch v.
Weseman,* 185 Iowa 1213, and cases cited supra.

Appellee, to whom no part of the rent had been paid at the
time of the trial, tendered the lease to appellant, duly assigned
to him. The evidence shows that the land was leased for its
full rental value. The failure and refusal of appellant to comply
with the contract certainly relieved appellee of the necessity
of complying therewith on his part. There is a controversy as
to whether appellee was ready and able, on March 1st, to make
the cash payment. He testified that he was able to pay $5,000,
and to deliver to appellant a mortgage for a like amount upon
Canada land, which he had previously agreed to accept in lieu
of cash. Appellant admitted that appellee had requested that
such an arrangement be made, but denied that he had consented
thereto. Appellant's recollection of various conversations and
of the several transactions is shown by the record to have been
somewhat inaccurate. He testified that he executed the $19,000
mortgage to his grantor; whereas it was executed by Smith to
Mrs. Watson, and payment assumed by him. He denied *in toto*
the conversation testified to by the other witnesses as to the
renewal or extension of the second mortgage at the time of the
execution of the contract. We are not inclined to hold that
appellee was mistaken as to his arrangement with appellant to
accept a mortgage upon Canada land in part payment of the
purchase price. Appellee, at the close of all the testimony,
offered to place appellant *in statu quo,* and, if the court should
find that the assignment of the lease to him did not accomplish

that purpose, to perform any judgment entered or condition prescribed by the court in addition thereto.

It is true that a vendee in default cannot recover the purchase price paid, and it is also true that appellee did not specifically tender the amount due March 1, 1921, nor offer to execute a mortgage to appellant for the balance of the purchase price; but appellant had failed to comply with the contract, and refused to secure an extension or renewal of the first mortgage; and therefore a tender would have been an idle ceremony. Reasonably prompt notice of rescission was served upon appellant, who has steadily ignored some of the provisions of the contract, and insisted upon specific performance while in default. The court directed appellee to assign the lease to appellant, and this he did, and tendered same to him during the trial. The equities are with the appellee.

Many questions not referred to herein are discussed at some length by counsel for appellant. None of them have been overlooked, but, as we view the record in this case, they are without controlling importance. It is our conclusion that the decree of the court below is right, and it is, accordingly,—*Affirmed*.

EVANS, ARTHUR, and FAVILLE, JJ., concur.