KYLE KILPATRICK et ux., Appellants, v. HAROLD M. SMITH et ux., Appellees.

No. 46656.

JULY 27, 1945.

Edward J. Dahms and Jordan & Jordan, all of Cedar Rapids, for appellants.

Stewart Holmes, of Cedar Rapids, for appellees.

BLISS, J.— ■ On March 16, 1942, plaintiffs and defendants, as vendees and vendors, respectively, executed a written contract for the purchase and sale of a residence property in Cedar Rapids. The consideration was $4,250, of which $400 was paid in cash on the execution of the contract and the balance was to be paid in monthly sums of $30 until the contract price was paid. The first installment was due April 16, 1942. The contract was on a printed form and contained the provision that the times of payment and of performance were the essence of the contract, and that upon any default therein, the vendors, at their option, by the service of the statutory thirty-days' notice, might declare the contract null and void and thereby forfeit all rights of the vendees under the contract, including any money paid by them. Plaintiffs went into possession of the property on April 13, 1942, and continued in possession until about May 4, 1942. On or about April 19, 1942, defendants called plaintiffs' attention to their failure to make the payment of April 16th, and were told by plaintiffs that the house had been misrepresented to them, and that they did not intend to perform the contract, but they would occupy the property until the $400 was used as rental. On April 22, 1942, defendants served on plaintiffs a notice that because of their failure to make the payment due April 16th, the contract would stand forfeited and canceled unless within thirty days from the service of the notice the payment in default and the costs of service were made. On May 5, 1942, plaintiffs served notice on defendants that they had elected to rescind the contract ''on account of misrepresentation, fraud and deceit practiced at and prior to the execution of said agreement.'' The notice demanded return of the cash payment of $400 and tendered possession of the property to defendants. Plaintiffs moved from the property at about the time of the service of the notice of rescission and surrendered the keys of the house to defendants on May 8, 1942. Before the expiration of the thirty-day period specified

in the notice of forfeiture, and on May 14, 1942, the defendants orally leased said property to a tenant, whom they placed in possession thereof on May 15, 1942. A written lease of the property, terminating September 1, 1943, was prepared at this time but it was not executed until September 1, 1942.

On or about May 8, 1942, plaintiffs filed their petition in this suit, alleging that the execution of the contract was induced by the fraud and misrepresentations of defendants, in that they falsely represented the house to be sixteen years old, when its age was forty years; the roof to be a year old, when it was ten years old; that the floors were very good, when they were sagged and had large cracks in them which were concealed by the rugs and coverings thereon; that the house was well constructed throughout, with good foundation and heavy sills, when it was not so constructed and was out of plumb. The petition alleged the service of the notice of forfeiture, and the service of their notice of rescission, their surrender of the property, and that they were ''willing to cancel the aforesaid contract any time defendants should require and make offer to do equity or whatever may be required of them by the Court in connection with the rescission of said contract.'' On May 18, 1942, the injunction prayed for in plaintiffs' petition, staying further action in the forfeiture proceedings, was served on the defendants. Defendants' motion, filed May 19, 1942, stating that the allegations in the petition were not misrepresentations but were ''mere puffing or sales talk,'' was overruled. In their answer, filed June 11, 1942, defendants admitted the execution of the contract, the payment of $400, the service of the notice of rescission and surrender of the property, all as alleged, and denied all other allegations. Defendants also filed a counter-claim, in count one of which they alleged the facts respecting the forfeiture of the contract and all rights of plaintiffs thereunder, including all money paid by them, and prayed for decree canceling the contract and forfeiting all rights of plaintiffs. In count two of the counterclaim, they alleged and prayed that in the event the court found for plaintiffs, they have judgment against plaintiffs for $40 for their occupancy of the property.

The trial was had in June 1943, and the court's findings and decree were entered July 6, 1943. There is no controversy over the facts. Under the oral lease made on May 14, 1942, and the written lease for a year, made on September 1, 1942, the defendants collected monthly rent of $35 from May 14, 1942. The defendants refused to refund the down payment of $400 to plaintiffs. The plaintiffs made no monthly payments and did not comply with the notice of forfeiture. There is nothing in the record before us indicating that the defendants ever filed in the office of the county recorder the notice of forfeiture with proofs of service, as provided by section 12393 of the 1939 Code of Iowa.

On June 4, 1943, defendants amended their answer by alleging that all defects in the property complained of by plaintiffs were apparent and easily discoverable and were known or should have been apparent to plaintiffs, as they had unrestricted opportunity to examine the property. By reply filed June 7th, and by amendment to petition to conform to proof filed June 10, 1943, plaintiffs alleged that the defendants, in leasing the property to a third party and placing him in possession thereof during the period granted the plaintiffs by the contract and the notice of forfeiture and chapter 527 of the 1939 Code, in which to mend the breach in the contract complained of by defendants, the latter, by their conduct, estopped themselves to proceed by forfeiture, and to retain the purchase money paid, and thereby accepted and assented to the rescission of plaintiffs and received the property thereunder. They further alleged in said pleadings that from May 18, 1942, until the decree of court the defendants were stayed by injunction from proceeding with the forfeiture, yet they exercised dominion over said property during all of this time under lease, and by their said conduct since May 14, 1942, defendants lost any right to the down payment of $400, except such equitable sum that they might be entitled to for the short time plaintiffs occupied the property, which sum the plaintiffs offered to credit to defendants.

On June 11, 1943, defendants amended their answer by alleging that in leasing said property they did not intend to

accept plaintiffs' rescission, but considered that plaintiffs had surrendered the property in compliance with the notice of forfeiture.

Defendant Harold Smith testified that:

"She [Mrs. McKenzie] took possession of the place May 15, 1942, when we rented it to them. We took possession in order to protect our investments and have had possession of it ever since and have collected the rents. * * * I have collected since May 15, 1942, $35.00 a month. I never got the approval of Mr. Kilpatrick to the collecting of the rents from the time the contract was executed * * * to the present time nor did I discuss it with him or advised with him. I did this on my own responsibility, to protect my own investment. First, I consulted with my attorney and followed his advice. * * * I was also served with notice that this court [district court] had enjoined me from going on with the forfeiture and with the notice of rescission and with this notice served and this. lawsuit pending I rented the property to someone else."

The trial court in its finding and decree adjudged that plaintiffs had failed to establish the allegations of fraud and misrepresentation in their original petition and that they were not entitled to the relief prayed for in the amendment to the petition to conform to the proof. The temporary injunction was dismissed. The decree adjudged that defendants had established the allegations in count one of their counterclaim, and under the forfeiture the contract was canceled, and title to the property was quieted in defendants, "as against any rights, claims or interest therein and thereto of plaintiffs." No specific mention is made respecting the $400 in the decree.

While the appellants apparently appealed from the decree they have limited the appeal to a specific matter. In the record filed in this court they state that it does not embrace the whole record. It omits the evidence pertaining to the fraud and misrepresentations alleged in the original petition. They do not appeal from the court's holding that they had failed to establish these allegations. The appeal is limited to the claimed error of the court in holding against them on the allegations of

the last amendment to the petition, which allegations of fact, on which their conclusions are based, are not denied by pleading nor proof, and are fully established. Appellants contend that appellees, by leasing the property and giving possession thereof to the tenant within and for a part of the thirty-day period during which appellants would have had the opportunity and the right to perform that part of the contract in which they were in default, and thus prevent a forfeiture, thereby placed themselves where they could not have performed the contract by giving possession of the property to appellants had they cured and removed the default. By such deliberate act of encumbering the property by lease and possession, the appellants contend that appellees nullified their attempted forfeiture and abandoned it, and accepted, acquiesced in, and assented to the rescission of appellants, and accepted the property as tendered to them thereunder, and lost any right they may have had to forfeit and keep the cash payment on the contract.

Appellants on this appeal present three questions and they are determinative of the rights of the parties:

First: Did the court err in decreeing that the appellees had perfected the cancellation of the contract and the forfeiture of all of appellants' rights thereunder, including any rights to the $400?

Second: Did the appellees, by their conduct in encumbering the property by a lease and possession of the property to a tenant, join with the appellants in a mutual rescission of the contract, or independently rescind it?

Third: If there was a mutual rescission, or independent rescissions, were the appellants entitled to be placed in statu quo by the return of the down payment less any credit thereon?

I. Under the contract and the notice of forfeiture, and under section 12392 of the 1939 Code, the appellants had thirty days from the service of the notice to comply with its demands and to avoid the forfeiture. During that time, by the contract, by the notice, and by the statute, the appellees were required to be ready and able to reinvest appellants with all rights under the contract as they existed before the breach. They were not entitled to a forfeiture unless they were in position to perform

fully on their part if the forfeiture were avoided in the manner provided by law. The appellees, being in default, could not forfeit the contract of the appellants because of the latters' default. Not having possession or the right of possession, the appellees could not grant either to the appellants in the event the forfeiture was avoided. The appellees, if they were wholly without title, would be unable to give or maintain possession in the appellants. In such situation they could not forfeit. Neither can they forfeit when they deliberately deprive themselves of the right to possession by granting it to a third person.

We have repeatedly said that the execution of a valid lease and possession of the premises thereunder is an encumbrance of the title, which breaches a contract to sell and convey real estate with marketable title. See Stephenson v. Neppel, 192 Iowa 246, 250–252, 182 N. W. 369; Van Wagner v. Van Nostrand, 19 Iowa 422, 428; Maichen v. Clay, 62 Iowa 452, 454, 455, 17 N. W. 658; Crooke v. Nelson, 195 Iowa 681, 686–688, 191 N. W. 122; Martin v. Roberts, 127 Iowa 218–220, 102 N. W. 1126; Culbertson v. Smith, 193 Iowa 436, 442, 187 N. W. 38; Miller v. McConnell, 179 Iowa 377, 382–386, 157 N. W. 943 (lease and sale); Waters v. Pearson, 163 Iowa 391, 395, 400, 406, 144 N. W. 1026.

There is, of course, a like breach when the vendor sells the property before the contract is performed. Pardoe v. Jones, 161 Iowa 426, 428–430, 143 N. W. 405; Auxier v. Taylor, 102 Iowa 673, 675, 676, 72 N. W. 291; McWhirter v. Crawford, 104 Iowa 550, 552–554, 72 N. W. 505, 73 N. W. 1021; First Nat. Bk. of Shenandoah v. LeBarron, 201 Iowa 853, 855; 208 N. W. 364.

In Waters v. Pearson, supra, 163 Iowa 391, 400, 144 N. W. 1026, 1030, McWhirter v. Crawford, supra, 104 Iowa 550, 72 N. W. 505, 73 N. W. 1021, and Auxier v. Taylor, supra, 102 Iowa 673, 72 N. W. 291, there were unsuccessful forfeitures attempted. In Waters v. Pearson, supra, the contract contained no provision for forfeiture, nor was time the essence of the contract, but the vendors attempted to terminate the contract on vendee's default and retain the advance payments. In reversing and denying the vendors such relief, the court said:

"In the case before us the vendors, defendants, though declaring default and breach by the vendee, did not elect to insist upon performance. They did elect to terminate the contract, and to keep the land. So electing, they leased the land for the ensuing year, and put it out of their power to further perform."

We have said and held a number of times that before a vendor is entitled to effect a forfeiture, whether statutory or otherwise, he must, himself, be in position to perform and carry out the undertaking on his part. In Watland v. Quaintance, 186 Iowa 1271, 1275, 171 N. W. 692, 694, the court said:

"It is the appellant, the vendor, who wants to cancel the contract and to have the purchase price forfeited. Upon that issue, he cannot prevail where it appears that he, himself, was not ready to perform in the contract time. *He may not declare a forfeiture because the other party failed to do stipulated things by the time fixed in the contract, if the vendor, too, was unable to perform at that time.*" (Italics ours.)

In McLain v. Smith, 201 Iowa 89, 94, 202 N. W. 239, 242, we said:

"Suffice it to say that, under the evidence, McLain made no effort whatever, and did nothing toward complying with this contract after the notice of forfeiture was served upon him. It is apparent from these facts, thus roughly stated, that this attempted forfeiture was of no validity, because Smith was not in a position to perform a contract with McLain at the time he attempted this forfeiture. We have held that, before vendor is entitled to declare a forfeiture of the contract, he must at least be in a position himself to perform. Watland v. Quaintance, 186 Iowa 1271."

In Marx v. King, 193 Iowa 29, 34, 186 N. W. 680, 682, in holding that a vendor in default may not forfeit the contract, we said:

"So far as the record reveals, appellee was not, at the time of the trial, the record owner of any of the premises described

in the contract. He was not, therefore, at the time the notice was served, in a position to forfeit the contract. Weiser v. Rowe, 185 Iowa 501.''

In Weiser v. Rowe, 185 Iowa 501, 503, 170 N. W. 753, 754, we said:

''The defendant's false offer and premature demand amounted to a breach on his part, and the plaintiff thereby became entitled to rescind.''

Sarazin v. Kunz, 226 Iowa 1309, 1312, 1313, 286 N. W. 471, 472, was a suit by a vendee to cancel and avoid an attempted forfeiture of a real-estate contract. In reversing a decree dismissing the petition, speaking through Justice Richards, we said:

''If it should be conceded that plaintiff was in default, yet the situation of the title as above described was such that Charles G. Kunz was likewise in default. It may be true in view of the wording of the contract that a tender of a warranty deed conveying the fee simple title was not required until whatever may have been still owing, if anything, on the contract had been paid or tendered. But nevertheless it has been repeatedly held that a condition upon which a vendor may forfeit the interest of his vendee is this—the vendor must himself be able to perform his undertakings. Defendant Charles G. Kunz was not in position so to do. 'A vendor in default cannot forfeit the contract. Marx v. King, 193 Iowa 29, 186 N. W. 680. * * * But, being themselves then in no position to perform their contract, they could not compel performance on the part of appellee, nor secure a forfeiture of her rights because of any failure on her part to comply. Weiser v. Rowe, 185 Iowa 501, 170 N. W. 753; Marx v. King, supra.' Keifer v. Dreier, 200 Iowa 798, 804, 205 N. W. 472, 475. See, also, McLain v. Smith, 201 Iowa 89, 202 N. W. 239, and Watland v. Quaintance, 186 Iowa 1271, 171 N. W. 692. Charles G. Kunz was not in position to effect a forfeiture. The trial court should have entered a decree setting aside and holding for naught the forfeiture that was attempted when the notice was served on October 14, 1937.''

See, also, Trammel v. Kemler, 226 Iowa 918, 923, 285 N. W.

196; Frey v. Stangl, 148 Iowa 522, 527, 528, 125 N. W. 868, L. R. A. 1916D, 462; Keifer v. Dreier, 200 Iowa 798, 803, 804, 205 N. W. 472.

Under these authorities the appellees were never in a position to effect a lawful forfeiture from May 14, 1942, on, so far as the record shows. This was true on the day the decree was entered for the lease to the McKenzies was still in effect. The decree, insofar as it establishes a forfeiture of the contract as against the appellees and their rights thereunder, including the $400, is erroneous.

■ II. It is the rule generally, and it has been so expressed by this court, and sometimes in stronger language, that forfeitures are not favorites of either law or equity, and when they are enforced, those claiming them should show that the equities are clearly on their side. Statutes imposing them should be construed strictly as against the forfeiture, and with liberality toward· those opposing it. One seeking a forfeiture under the provisions of chapter 527 of the 1939 Code of Iowa should fully and strictly follow the procedure there required. See 37 C. J. S., Forfeitures, section 4(b) ; Cody v. Wiltse, 130 Iowa 139, 143, 144, 106 N. W. 510; Reiger v. Turley, 151 Iowa 491, 501, 131 N. W. 866; Holman v. Wahner, 221 Iowa 1318, 1321, 1325, 268 N. W. 168; Groen v. Ferris, 189 Iowa 21, 26, 176 N. W. 213; State ex rel. Anti-Saloon League v. McGraw, 191 Iowa 1090, 1093, 1094, 183 N. W. 593; Converse v. Elliott, 200 Iowa 1023, 1029, 205 N. W. 867; Wolke v. Watts & Co., 125 Iowa 321, 323, 101 N. W. 76; In re Estate of Emerson, 191 Iowa 900, 906, 183 N. W. 327; Montgomery v. Beller, 207 Iowa 278, 281, 282, 222 N. W. 846.

■ III. Appellants moved into the house on April 13, 1942, and then noted the defects which had escaped their notice when they went through it while it was furnished. They did not make the payment due on April 16th, and on April 19th they told appellees that the house had been falsely represented to them and that they would not perform the contract. Immediately appellees consulted a lawyer and on April 22d the notice of forfeiture was served. It said nothing about the down payment.

Appellants consulted a lawyer and a notice of rescission was prepared alleging fraud in the execution of the contract. It expressly tendered back the property to appellees and demanded repayment of the $400 down payment. Service of the notice on both appellees was completed on May 6th. The key to the property was delivered to appellees on May 8th. Acting under advice of their lawyer, they immediately orally leased the property on May 14th to the McKenzies for $35 a month and put them in possession of the property on the following day. Appellants' petition, verified May 8th, prayed for an injunction against the forfeiture. In the notice of forfeiture, prepared only shortly before, appellees plainly told the appellants that they had thirty days in which to reinstate the contract into good standing. Then the notice of rescission was served and the suit was brought. As said in Olson v. Brison, 129 Iowa 604, 606, 106 N. W. 14, 15, "The object of the tender is to give the vendor the option of joining in the rescission and taking back the property at the earliest period." The appellees promptly and deliberately, on service of the notice of rescission, without waiting for the expiration of the thirty-day period, took absolute control and dominion over the property. The natural inference is that they thought it best to abandon the forfeiture and avoid litigation and to accept and join in the rescission of appellants. The only light given as to their intention or explanation of their conduct, on the trial, was the testimony of Mr. Smith that he was "protecting his investments." He had $400 of appellants' money and was seeking in addition rent for the last week of the period which the statute and the contract gave appellants for redemption. We must assume that appellees intended the natural and legal consequences of their conduct, which were the nullifying of the forfeiture proceedings and the joinder with appellees in the mutual rescission of the contract. The leasing of the property and the granting of possession were unequivocal acts of ownership and dominion definitely antagonistic to the contract and statutory rights of the appellants. In Advance-Rumely Thresher Co. v. Wharton, 211 Iowa 264, 273, 233 N. W. 673, 676, 77 A. L. R. 1153, the court discussed at length what use by the buyer of a farming implement, who had rescinded

its purchase, might be construed as such an act of ownership as to nullify his rescission. Quoting from Cream City Glass Co. v. Friedlander, 84 Wis. 53, 59, 54 N. W. 28, 30, 21 L. R. A. 135, 36 Am. St. Rep. 895, the opinion states:

" 'They took their position definitely. After that act they could not deal with the property in any way inconsistent with the rejection, if they proposed to insist upon their right to reject. [Citing a decision.] They must do no act which they would have no right to do unless they were owners of the goods.' "

Applying the rule to this case, it can be undeniably said that appellees, in adopting statutory forfeiture, took their position definitely, and after doing so they could not deal with the property in a way inconsistent with the forfeiture. They must do no act which they would have no right to do unless they were owners of the property. Nothing could have been more inconsistent with the forfeiture proceedings than what they did.

"It is a familiar rule that parties to any contract may mutually rescind or abandon the same. [Citing cases.] By such mutual rescission the parties to the contract lose all their rights thereunder." Wilson v. Holub. 202 Iowa 549, 554, 210 N. W. 593, 595, 58 A. L. R. 646.

"It is undoubtedly the law that the parties to a contract can mutually agree to a rescission of the same. This is the rule of our cases. * * * 'The rescission of a contract by mutual consent does not require a formal agreement or release, but may result from any act or course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated or terminated, *or from the acquiescence of one party in its explicit repudiation by the other.'* * * * There can be rescission by the acts and conduct of the parties, without an express oral agreement to rescind." Mortensen v. Frederickson Bros., 190 Iowa 832, 846–848, 180 N. W. 977, 982.

See, also, Nason v. Woodward, 16 Iowa 216, 219; Bringolf

v. Parkhurst Auto Club, 192 Iowa 1038, 1041, 186 N. W. 11;
Olsen v. Sortedahl, 143 Iowa 166, 176, 121 N. W. 559.

The fact that the court found against appellants on the
issue of fraudulent representations is of little importance on
the question of mutual rescission. As said in Pedley v. Freemen,
132 Iowa 356, 358, 109 N. W. 890, 891, 119 Am. St. Rep. 557:

"Arguments of counsel are devoted largely to the evidence
as to the alleged false representations pleaded by the plaintiff.
In the view we take of the record, the truth of these allegations
is not necessarily a controlling factor in the case, and we shall
not take the time to set out or discuss the testimony of the
witnesses. * * * But, be this as it may, and whether good and
sufficient cause did or did not exist for either party to rescind
and abandon the contract, we are of the opinion that the trial
court was clearly right in holding that it was in fact rescinded
and abandoned by both * * *."

For a like holding, see Pardoe v. Jones, supra. 161 Iowa
426, 429, 143 N. W. 405.

It is our conclusion that the conduct of the appellees, sub-
sequent to the rescission of appellants, was a rescission of the
contract and a joinder in the rescission of the appellants.

IV. It is a well-recognized rule that one who rescinds
a contract must restore or offer to restore the status quo of
the other party. He must return or offer to return what he
has received. And if there is a mutual rescission each party
is entitled to be put in statu quo so far as possible. Each is
to be restored to his former rights, and placed in the situation
each occupied before the contract was entered into so far as
it is equitably and reasonably possible. This court has so
held many times. A few of the decisions are Pedley v. Freemen,
supra, 132 Iowa 356, 109 N. W. 890, 119 Am. St. Rep. 557;
Nelson v. Chingren, 132 Iowa 383, 106 N. W. 936; Miller v.
McConnell, supra, 179 Iowa 377, 157 N. W. 943; Tague v.
McColm, 145 Iowa 179, 123 N. W. 960; Waters v. Pearson,
supra, 163 Iowa 391, 144 N. W. 1026; Nason v. Woodward,
supra, 16 Iowa 216; Pardoe v. Jones, supra, 161 Iowa 426, 143
N. W. 405; Wright v. Swigart, 172 Iowa 743, 154 N. W. 938;

Perrin v. Chidester, 159 Iowa 31, 139 N. W. 930; Martin v. Roberts, supra, 127 Iowa 218, 102 N. W. 1126; First Nat. Bk. of Shenandoah v. LeBarron, supra, 201 Iowa 853, 208 N. W. 364; Lambertson v. National Inv. & Fin. Co., 200 Iowa 527, 202 N. W. 119; Holman v. Wahner, supra, 221 Iowa 1318, 268 N. W. 168; Dolliver v. Elmer, 220 Iowa 348, 260 N. W. 85.

The appellants have clearly brought themselves within the rule of these authorities and are entitled to recover the full amount of the down payment which they made on the contract less any credit to which the appellees are entitled. Appellees occupied the property for less than a month. It was about a month from the time they moved into the property until the McKenzies began paying rent. The property was rented for $35 a month. Appellants should be charged with such sum. Kunde v. O'Brian, 214 Iowa 921, 243 N. W. 594. Appellants are entitled to judgment for $365 with legal interest from May 6, 1942, when they rescinded.

The judgment and decree is reversed with direction to the district court to enter judgment in conformity herewith, with costs taxed to the appellees.—Reversed.

All JUSTICES concur.